1   SCOTT A. SOMMER (Bar No. 72750)
    (e-mail:  scott.sommer@pillsburylaw.com)
2   ANDREW D. LANPHERE (Bar No. 191479)
    (e-mail:  andrew.lanphere@pillsburylaw.com)
3   MARTIN R. SUL (Bar No. 262583)
    (e-mail:  martin.sul@pillsburylaw.com)
4   PILLSBURY WINTHROP SHAW PITTMAN LLP
    50 Fremont Street
5   San Francisco, CA 94105
    Telephone:  (415) 983-1000
6   Facsimile:  (415) 983-1200

7   MARK E. ELLIOTT (Bar No. 157779)
    PILLSBURY WINTHROP SHAW PITTMAN LLP
8   (email:  mark.elliott@pillsburylaw.com)
    725 South Figueroa Street, Suite 2800
9   Los Angeles, CA 90017-5406
    Telephone:  (213) 488-7100
10  Facsimile:  (213) 629-1033

11  Attorneys for Plaintiffs
    CITY OF RIALTO and
12  RIALTO UTILITY AUTHORITY

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

**CV09-7501 CBM (DTBx)**

| | |
|---|---|
| 16  CITY OF RIALTO, a California Municipal corporation; RIALTO | Case No. |
| 17  UTILITY AUTHORITY, a Joint Powers Authority organized and | COMPLAINT FOR: |
| 18  existing under the laws of the State of California, | 1. RECOVERY OF RESPONSE COSTS PURSUANT TO CERCLA (42 U.S.C. § 9607(a)); |
| 19  | |
| 20              Plaintiffs, | 2. DECLARATORY RELIEF RE: FUTURE RESPONSE COSTS PURSUANT TO CERCLA (42 U.S.C. § 9613(g)); |
| 21  v. | |
| 22  UNITED STATES DEPARTMENT OF DEFENSE; KWIKSET LOCKS, INC.; | |
|     EMHART INDUSTRIES, INC.; | 3. RECOVERY OF RESPONSE COSTS PURSUANT TO HSAA (Cal. Health & Safety Code, § 25300, *et seq.*; § 25363(e)); |
| 23  BLACK & DECKER INC.; PYROTRONICS CORPORATION; | |
|     COUNTY OF SAN BERNARDINO; | |
| 24  ROBERTSON'S READY MIX, INC.; BROCO ENVIRONMENTAL, INC.; | 4. DECLARATORY RELIEF PURSUANT TO HSAA (Cal. Health & Safety Code, § 25300, *et seq.*, § 25363); |
| 25  DENOVA ENVIRONMENTAL, INC.; ENVIRONMENTAL ENTERPRISES, | |
| 26  INC.; AMERICAN PROMOTIONAL EVENTS, INC.-WEST; PYRO | |
| 27  SPECTACULARS, INC.; TROJAN FIREWORKS; ASTRO | |
| 28  PYROTECHNICS; ZAMBELLI | |

1   FIREWORKS MANUFACTURING
    CO.; RAYTHEON COMPANY;
2   GENERAL DYNAMICS
    CORPORATION; HUGHES
3   AIRCRAFT COMPANY; TUNG
    CHUN COMPANY; WONG CHUNG
4   MING, aka CHUNG MING WONG;
    WHITTAKER CORPORATION;
5   DELTA T. INC.; AMERICAN WEST
    EXPLOSIVES; GOLDEN STATE
6   EXPLOSIVES; E.T.I. EXPLOSIVE
    TECHNOLOGIES INTERNATIONAL,
7   INC. OF CALIFORNIA; EDWARD
    STOUT; EDWARD STOUT AS THE
8   TRUSTEE OF THE STOUT-
    RODRIGUEZ TRUST, aka THE
9   SCHULZ FAMILY TRUST;
    ELIZABETH RODRIGUEZ; JOHN
10  CALLAGY AS TRUSTEE OF THE
    FREDERIKSEN CHILDREN'S
11  TRUST UNDER TRUST
    AGREEMENT DATED
12  FEBRUARY 20, 1985; LINDA
    FREDERIKSEN AS TRUSTEE OF
13  THE E.F. SHULZ TRUST; JOHN
    CALLAGY AS TRUSTEE OF THE
14  E.F. SCHULZ TRUST; LINDA
    FREDERIKSEN; LINDA
15  FREDERIKSEN AS TRUSTEE
    OF THE WALTER M. POINTON
16  TRUST DATED 11/19/91; LINDA
    FREDERIKSEN AS TRUSTEE OF
17  THE MICHELLE ANN POINTON
    TRUST UNDER TRUST
18  AGREEMENT DATED
    FEBRUARY 15, 1985; JOHN
19  CALLAGY; MARY MITCHELL;
    JEANINE ELZIE; STEPHEN
20  CALLAGY; MICHELLE ANN
    POINTON; ANTHONY RODRIGUEZ;
21  ENSIGN-BICKFORD COMPANY;
    ORDNANCE ASSOCIATES;
22  THOMAS O. PETERS; THOMAS O.
    PETERS REVOCABLE TRUST;
23  HARRY HESCOX; FRED
    SKOVGARD; MILDRED WILKINS;
24  KEN THOMPSON, INC.; RIALTO
    CONCRETE PRODUCTS,
25
            Defendants.
26  ─────────────────────────
27
28

5.  INJUNCTIVE RELIEF
PURSUANT TO RCRA (42 U.S.C.
§ 6901, *et seq.*) (BY PLAINTIFF
CITY OF RIALTO ONLY);

6. NUISANCE;

7. PUBLIC NUISANCE;

8. NEGLIGENCE;

9. CONTINUING TRESPASS TO
LAND;

10. INVERSE CONDEMNATION;

11. DECLARATORY RELIEF
PURSUANT TO THE
DECLARATORY JUDGMENT ACT
(28 U.S.C. §§ 2201, 2202);

12. DECLARATORY RELIEF
UNDER STATE LAW (CAL. CODE
CIV. PROC., § 1060)

DEMAND FOR JURY TRIAL
(FRCP 38)

GENERAL ALLEGATIONS

JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of Plaintiffs claims for relief, and all other controversies arising herein under Chapter 103 of Title 42 of the United States Code, pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), 42 U.S.C. §§ 9601-9657, § 9107(a), and pursuant to 28 U.S.C. § 1331 as involving questions arising under federal law.  Departments, agencies and instrumentalities of the United States are liable under CERCLA pursuant to an express statutory waiver of sovereign immunity.  (42 U.S.C. § 9620(a).)  This Court also has subject matter jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

2.    This Court has jurisdiction over the subject matter of Plaintiff CITY OF RIALTO's claims for relief asserting a citizens' suit claim pursuant to Sections 7002(a)(l)(A) and 7002(a)(l)(B) of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as further amended by the Hazardous and Solid Waste Amendments of 1984 ("RCRA"), 42 U.S.C. §§ 6901-6992(k), § 6972(a)(l)(A), (a)(l)(B), pursuant to the provisions of RCRA § 7002(a), 42 U.S.C. § 6972(a), and pursuant to 28 U.S.C. § 1331 as involving questions arising under federal law.  Departments, agencies and instrumentalities of the United States are liable under RCRA pursuant to an express statutory waiver of sovereign immunity.  (42 U.S.C. § 6961(a).)

3.    This Court has subject matter jurisdiction over Plaintiffs' remaining claims for relief brought under state law by virtue of its statutorily-provided supplemental jurisdiction, 28 U.S.C. § 367, and under the doctrine of pendent jurisdiction set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed. 218 (1966).  The claims under state law arise from the same common nucleus of operative facts as the claims under federal law.  The state law

1    and federal law claims are so intertwined that it is appropriate for this Court to

2    exercise its jurisdiction over the state law claims asserted herein.

3        4.    Plaintiff has satisfied all the jurisdictional requirements to filing this

4    Complaint ("Complaint"). While unnecessary to pursue its federal cost recovery

5    and declaratory relief claims under CERCLA, Plaintiff has, at least 90 days prior to

6    filing of this Complaint, given all necessary notices required by the appropriate

7    citizens suit provisions of RCRA (42 U.S.C. § 6972(b)(1)(2)(A)) to the parties

8    named herein.  Plaintiff served a new public entity tort claim on defendant

9    COUNTY OF SAN BERNARDINO on or about July 20, 2004, and that new claim

10   was denied by operation of law on or about September 7, 2005, when COUNTY

11   failed to act upon it.  As against COUNTY, the Fourth, Fifth, Seventh, Eighth,

12   Ninth, Tenth and Twelfth Claims for Relief of this Complaint are all supported by

13   this new notice, which is timely in light of the continuing and repeated course of

14   conduct and omissions causing damages to Plaintiff that are continuing and have

15   not yet stabilized, and for which the relevant claims have not yet accrued pursuant

16   to the stabilization rule of accrual under the doctrine of *Lee v. Los Angeles County*

17   *Metropolitan Transportation Authority,* 107 Cal.App.4th 848, 858 (2003).

18       5.    Since the properties and natural groundwater resources that are the

19   subject of this action are located in the City of Rialto, San Bernardino County,

20   California, within this Court's District, since the alleged imminent and substantial

21   endangerment has occurred at said properties, and since the release of hazardous

22   substances into the environment and related wrongful acts alleged herein took

23   place at said properties, and has injured and affected said properties and resources,

24   venue of law is proper in this Court pursuant to 42 U.S.C. § 9607(a), 42 U.S.C.

25   § 6972(a), 42 U.S.C. § 9659(b), 28 U.S.C. § 1391(b), and all applicable law.

26                          NATURE OF ACTION

27       6.    Plaintiffs CITY OF RIALTO and RIALTO UTILITY AUTHORITY

28   (hereinafter sometimes collectively and/or individually referred to as "Plaintiff" or

701796005v2                          - 2 -                          COMPLAINT

1    "CITY") bring this action to:  (1) require certain Defendants to investigate and

2    clean up the environmental contamination caused or contributed to by Defendants

3    which has migrated and continues to migrate from numerous industrial,

4    commercial, former military and waste disposal sites and facilities within the

5    approximately 2800-acre North Rialto area formerly known as the Rialto

6    Ammunition Storage Point (the "RASP Area" or "RASP Site") upon which

7    Defendant UNITED STATES DEPARTMENT OF DEFENSE (the "DOD")

8    conducted military operations and activities from approximately December 1941

9    through July 1946; and (2) recover CITY's costs, expenses, losses and other

10   damages caused by Defendants from the environmental contamination which has

11   been released and continues to be released into the environment, and which has

12   migrated and continues to migrate from their facilities and sites within the RASP

13   Area in North Rialto.  The claims alleged herein relate back to the date of

14   January 21, 2004 pursuant to Section 1 of a Memorandum of Understanding

15   between the parties entered into in June 2008, as amended, which was the date of

16   filing of that certain action No. ED CV 04-79(SSx) filed by CITY in the U.S.

17   District Court for the Central District of California.

18         7.     Plaintiff CITY OF RIALTO is a municipal corporation, with a

19   population of approximately 95,000 persons, duly organized and existing under the

20   laws of the State of California and located in San Bernardino County, California.

21   Plaintiff RIALTO UTILITY AUTHORITY is a Joint Powers Authority duly

22   organized and existing under the laws of the State of California.  CITY's public

23   works agency is responsible for supplying a safe, potable and reliable drinking

24   water source to approximately 10,000 service connections, representing just under

25   half of CITY's population.  CITY possesses valuable adjudicated and

26   unadjudicated proprietary water rights to draw water from, and valuable rights to,

27   inter alia, recharge and store water in, one or more contaminated local aquifers,

28   including but not necessarily limited to, an aquifer/s within the Rialto/Colton

1    Groundwater Basin.  CITY is the successor to certain mutual water companies and
2    other water service providers that initiated pumping from local aquifers in the late
3    1800's.  Today, CITY relies almost entirely on local aquifers to meet its needs for
4    water.  CITY holds valuable proprietary water rights in these aquifers, one or more
5    of which have been contaminated by perchlorate.  CITY holds these proprietary
6    water rights both in its own name and as an owner of shares in certain mutual
7    water companies.  The CITY OF RIALTO, in its own name and as an owner of
8    shares in mutual water companies, is also a holder of water rights under decrees,
9    judgments and other court proceedings (collectively, "Adjudications").  The
10   Adjudications govern the management of and production from aquifers from which
11   CITY (and others) draw water.  The Adjudications give CITY additional valuable
12   proprietary rights in the one or more aquifers that have been contaminated by
13   perchlorate.

14        8.        Perchlorate, a chemical whose molecules are comprised of one
15   chlorine and four oxygen atoms, is principally used to accelerate the combustion of
16   rocket fuels and propellants and for the manufacture of explosives, munitions,
17   flares, ordnance, and pyrotechnic products, such as fireworks.  Due to its
18   ignitability and/or other characteristics as an oxidizing agent, perchlorate that is
19   disposed of, discharged or released into the environment is a "hazardous solid
20   waste" within the definitions of both RCRA and CERCLA.  (42 U.S.C.
21   §§ 6903(5), (27), 9601(14)(c); 40 C.F.R. §§ 261.2, 261.3(a)(2)(i), 261.20(a);
22   *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1059-1060
23   (C.D. Cal., July 15, 2003).)  The U.S. EPA has determined that perchlorate causes
24   adverse human health effects, including inhibition of iodine uptake to the thyroid
25   gland, producing adverse physical and developmental problems, particularly in
26   pregnant women and their developing fetuses, and including behavioral changes
27   and mental retardation in children.  Perchlorate is a salt which dissolves readily in
28   water, spreads rapidly with the water through permeable and semi-permeable soils

1   down through the unsaturated zone and into groundwater, and requires expensive

2   remediation technologies to remove from water or to reduce to levels below

3   governmentally-established limits, such as action levels, public health goals

4   ("PHGs"), or maximum contaminant levels ("MCLs").

5       9.      The scientific technology required to test for and detect concentrations

6   of perchlorate at or below low ppb levels did not exist prior to late 1997. At the

7   time of filing of CITY's original complaint, the California State Notification Level

8   (an advisory standard) for perchlorate in drinking water was four (4) parts per

9   billion ("ppb"), as set by the California Department of Health Services ("DHS"),

10   having been lowered from the previous level of 18 ppb on January 18, 2002. This

11   California law required water providers to notify their governing bodies when

12   perchlorate concentrations in their water supply equaled or exceeded the 4 ppb

13   benchmark. Since the filing of CITY's original complaint, on or about March 12,

14   2004, the Office of Environmental Health Hazard Assessment ("OEHHA") of the

15   California Environmental Protection Agency issued a Public Health Goal for

16   Perchlorate in Drinking Water ("PHG") of 6 ppb. Also, on or about that date, the

17   DHS revised its California State Notification Level to 6 ppb. The California

18   Department of Health Services has adopted a MCL of 6 ppb, effective October 18,

19   2007.

20       10.     Perchlorate has been detected in seven of CITY's drinking water

21   supply wells, five of which are located in and/or which draw from the

22   contaminated Rialto-Colton Groundwater Basin at levels ranging from about 1.7 to

23   300 ppb. Non-production, test wells within the Basin have contamination levels of

24   up to 10,000 ppb. Upon detection of perchlorate, CITY took its contaminated

25   production wells out of service. Disabling contaminated wells has resulted in

26   temporal total potable water losses to CITY of approximately 10,000 gallons per

27   minute, or over 14 million gallons per day. CITY anticipates that the perchlorate

28   contamination will spread to other wells drawing from the contaminated aquifer/s

1    in the immediate future if the existing perchlorate contamination plume, currently

2    estimated to span over 6.5 miles from its origins in the RASP Area, continues to

3    migrate as anticipated.  On July 15, 2003, the Rialto City Council declared a water

4    shortage emergency under California Water Code §§ 350, *et seq*., because of the

5    effects of the perchlorate contamination and the local drought.  On July 6, 2004,

6    the California Regional Water Quality Control Board - Santa Ana Region

7    ("RWQCB"), acting pursuant to its Cleanup and Abatement Order ("CAO")

8    No. R8-2003-0013, notified defendant COUNTY OF SAN BERNARDINO

9    ("COUNTY") that Rialto Well No. 3 is currently threatened to be "impacted by

10    perchlorate that is migrating from the County's [RASP Area] Rialto property."

11    Loss of additional wells could result in CITY being unable to meet its citizens'

12    demand for potable water.

13          11.    CITY has installed treatment equipment and resumed pumping water

14    from some wells in which the perchlorate has been detected, and CITY has also

15    terminated or curtailed the use of some wells as a result of the contamination and

16    attempts to mitigate it.  CITY and these purveyors are now treating at the well head

17    on such recommissioned wells to remove perchlorate from water taken from the

18    perchlorate-polluted aquifer/s so that it can be served to their customers.

19    Treatment equipment is installed and operating in the RIALTO's Chino Well #2.

20    Treatment equipment in Chino Well #1 is operational and is undergoing the

21    requisite demonstration phase testing prior to delivering water to RIALTO's

22    system.  Several other CITY wells remain shut down and fully or intermittently

23    inoperable due to the perchlorate pollution and cannot be equipped with

24    perchlorate removal equipment until funds to do so are obtained.  The cost per well

25    for well-head treatment for perchlorate removal in terms of capital and operation

26    and maintenance expenses is very substantial and there is an approximate 6-month

27    lead time between ordering the equipment and obtaining necessary Department of

28    Health Services approval.  CITY has been forced to significantly raise the rates

1    charged to its water consumers to cover damages and costs incurred as a result of

2    the perchlorate contamination.

3         12.    To date, CITY has spent in excess of $18,000,000, as a result of

4    perchlorate contamination in one or more contaminated aquifers.  These monies

5    have been spent in conducting investigations, identifying processes by which

6    perchlorate can be removed from the drinking water, and performing well head

7    treatments.  Preliminary efforts, analysis, and characterization strongly suggest that

8    the groundwater in the contaminated aquifer/s flows generally in a northwest-to-

9    southeast direction, paralleling the Rialto/Colton Fault, and that a perchlorate

10   contaminant plume originating in the RASP Area is also moving in that general

11   direction.  The perchlorate and TCE in the soil and groundwater at, under, and

12   emanating from, the RASP Area sites poses an imminent and substantial threat to

13   public health and the environment.

14        13.    The groundwater contamination beneath and affecting CITY's wells

15   and properties, and its proprietary and other property rights and interests in the

16   formerly pristine but now contaminated aquifer/s and its/their natural groundwater

17   resources, is attributable, in whole or in part, to the Defendants' historical, current

18   and ongoing releases and disposal of significant quantities of hazardous substances

19   and wastes, including perchlorate, at various sites and facilities within the RASP

20   Area, including, but not limited to, Defendant COUNTY's Mid-Valley Sanitary

21   Landfill.  Over time, some of the released and disposed hazardous substances and

22   wastes has moved vertically downward into and through the RASP Area soils to

23   contaminate the underlying groundwater, and has subsequently flowed into,

24   beneath and onto CITY's properties and wells, causing water contamination and

25   well closure, and necessitating the employment of expensive treatment and

26   remediation technologies, inter alia.

27        14.    The Defendants' activities described herein have resulted in

28   discharges and releases of hazardous substances, including perchlorate, into the

1    Rialto-Colton Groundwater Basin and those discharges and releases of hazardous

2    substances have produced a contamination plume extending to the City of Colton

3    that is affecting Colton's water rights and drinking water wells.  City believes any

4    remediation activity should be designed to remediate the entire Rialto-Colton

5    Groundwater Basin.

6         15.    CITY's response actions to the discovery of perchlorate

7    contamination were taken to minimize damage to public health and the

8    environment.  The detection of perchlorate in the Rialto-Colton Groundwater Basin

9    created an immediate and emergency threat to public health and safety.  CITY has

10   obtained and considered the available data regarding the impacts of perchlorate on

11   humans, even in low doses, and acted to address the scientific community's reports

12   about the threat posed by serving even low doses of perchlorate.  In the interest of

13   an expeditious cleanup and acting in good faith to remove the environmental

14   contamination caused by perchlorate and TCE, CITY undertook response actions,

15   including, but not limited to, the following:

16         (a)    CITY conducted a preliminary assessment to identify the

17   source and nature of the release of perchlorate and TCE.

18         (b)    CITY has made two declarations of water supply emergency

19   caused by the perchlorate and TCE contamination.  CITY has also initiated a water

20   conservation program.

21         (c)    As part of its community involvement plan, CITY has

22   consistently invited public comment when considering its alternatives to respond to

23   the contamination.  CITY has made available to the public, and will continue to

24   make available, all of the documents related to its substantial compliance with the

25   National Contingency Plan ("NCP").  Copies of this administrative record

26   available for public review are maintained at the Rialto Public Library and City

27   Clerk's office.  The administrative record is also available online.  A community

28

1   relations coordinator has been appointed, and responds to citizens' inquiries

2   regarding perchlorate.

3           (d)   CITY has thoroughly investigated removal alternatives,

4   including cost, functionality, and feasibility.  The selection of treatment

5   implemented on Chino Well #1 and Well #2 was discussed by the Rialto City

6   Council at a regularly scheduled meeting.

7           (e)   In addition to a number of public meetings held by the City

8   Council, and jointly with the Rialto School District and RWQCB, numerous "town

9   hall" meetings have been held to offer the public additional opportunities to offer

10  comment on the investigation of the contamination and the consideration of

11  response activities.

12          (f)   CITY has provided notice to the RWQCB and EPA of the

13  perchlorate and TCE problems.  CITY is working with these agencies, including

14  providing factual information, data, and comments, to consider the necessary scope

15  of investigation and eventual remediation of the Rialto-Colton Basin.

16          (g)   CITY has considered state laws and regulations in protecting

17  the public health and its obligation to maintain an adequate supply of safe, potable

18  water.

19          (h)   CITY has obtained all necessary permits for response activities,

20  including the wellhead treatment as described above.

21          (i)   CITY has incurred response costs in investigating the

22  contamination and in implementing responsive measures to temporarily address the

23  contamination and allow the city to provide clean water to its ratepayers.  CITY

24  has maintained documents to support each response action and verify all associated

25  costs.  These actions and the costs incurred in taking them are consistent and in

26  substantial compliance with the NCP.

27

28

DEFINITIONS

16.     "Perchlorate," as used in this Complaint, is an oxidizing anion which is both a "hazardous substance" and "hazardous solid waste" as defined under CERCLA and RCRA.  (42 U.S.C. §§ 6903(5), (27), 9601(14)(c); 40 C.F.R. §§ 261.2, 261.3(a)(2)(i), 261.20(a); *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053,1059-1060 (C.D. Ca., July 15, 2003).)

17.     "Disposal," as used in this Complaint, shall have the meaning set forth in RCRA § 1004(3), 42 U.S.C. § 6903(3):

> The discharge, deposit, injection, dumping, spilling, leaking, or
>
> placing of any solid waste or hazardous waste into or on any land or
>
> water so that such solid waste or hazardous waste or any constituent
>
> thereof may enter the environment or be emitted into the air or
>
> discharged into any waters, including ground waters.

18.     "Environment," as used in this Complaint, shall have the meaning set forth in CERCLA § 101(8), 42 U.S.C. § 9601(8):

> (A) the navigable waters, the waters of the contiguous zone, and the
>
> ocean waters of which the natural resources are under the exclusive
>
> management authority of the United States ... and (B) any other
>
> surface water, groundwater, drinking water supply, land surface or
>
> subsurface strata, or ambient air within the United States or under the
>
> jurisdiction of the United States.

19.     "Facility," as used in this Complaint, shall have the meaning set forth in CERCLA § 101(9), 42 U.S.C. § 9601(9):

> (A) Any building, structure, installation, equipment, pipe or pipeline
>
> (including any pipe into a sewer or publicly owned treatment works),
>
> well, pit, pond, lagoon, impoundment, ditch, landfill, storage
>
> container, motor vehicle, rolling stock, or aircraft, or (B) any site or

1   area where a hazardous substance has been deposited, stored, disposed

2   of, or placed, or otherwise come to be located…

3       20.   "Hazardous waste," as used in this Complaint, shall have the meaning

4   set forth in RCRA § 1004(5) and its implementing regulations:

5   …a solid waste, or combination of solid wastes, which because of its

6   quantity, concentration, or physical, chemical or infectious

7   characteristics may –

8       (A) cause or significantly contribute to an increase in mortality

9   or an increase in serious irreversible, or incapacitating reversible,

10   illness; or

11       (B) pose a substantial present or potential hazard to human

12   health or the environment when improperly treated, stored,

13   transported, or disposed of, or otherwise managed.  (42 U.S.C.

14   § 6903(5).)

15   "'Characteristic' hazardous wastes are those wastes that are ignitable,

16   corrosive, reactive, or toxic, as those terms are defined in 40 C.F.R. §§ 261.21-

17   261.24.  See § 261.3(a)(2)(i) and 261.20(a)."  (*Castaic Lake Water Agency v.*

18   *Whittaker Corp., supra,* 272 F.Supp.2d 1053, 1059-1060.)

19       21.   "Hazardous substance," as used in this Complaint shall have the

20   meaning set forth in 42 U.S.C. § 9601(14):

21   The term "hazardous substance" means (A) any substance designated

22   pursuant to Section 1321(b)(2)(A) of Title 33, (B) any element,

23   compound, mixture, solution, or substance designated pursuant to

24   Section 9602 of this title, (C) any hazardous waste having the

25   characteristics identified under or listed pursuant to Section 3001 of

26   the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including

27   any waste the regulation of which under the Solid Waste Disposal Act

28   [42 U.S.C.A. §§ 6901, *et seq.*] has been suspended by Act of

1    Congress), (D) any toxic pollutant listed under Section 1317(a) of

2    Title 33, (E) any hazardous air pollutant listed under Section 112 of

3    the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently

4    hazardous chemical substance or mixture with respect to which the

5    [EPA] has taken action pursuant to Section 2606 of Title 15.

6    22.    "National Contingency Plan" ("NCP"), as used in this Complaint,

7    means the National Oil and Hazardous Substance Pollution Contingency Plan as

8    set forth at 40 CFR Part 300, which is the Congressionally-mandated plan

9    developed by the U.S. EPA that delineates the required procedures for

10   investigating, analyzing remedial alternatives, responding to and abating the

11   adverse affects of releases of hazardous substances into the environment.

12   23.    "Release," as used in this Complaint, shall have the meaning set forth

13   in CERCLA § 101(22), 42 U.S.C. § 9601(22):

14       …any spilling, leaking, pumping, pouring, emitting, emptying,

15       discharging, injecting, escaping, leaching, dumping or disposing into

16       the environment (including the abandonment or discarding of barrels,

17       containers, and other closed receptacles containing any hazardous

18       substance or pollutants or contaminant)…

19   24.    "Response costs," as used in this Complaint, means the cost of

20   "removal" of and "remedial action" with respect to hazardous substances, as those

21   terms are defined in CERCLA § 101(23) and (24), 42 U.S.C. § 9601(23) and (24),

22   and all other costs necessary to respond to releases of hazardous substances, as

23   defined in CERCLA § 101(25), 42 U.S.C. § 9601 (25), and all applicable law.

24   Such costs include, but are not limited to, costs incurred to investigate, monitor,

25   assess and evaluate the hazardous substances release, as well as costs of removal

26   and disposal of the hazardous substance.  Such costs also include those incurred in

27   actions to remedy permanently the hazardous substance release, including, but not

28   limited to, (1) the storage, confinement, and cleanup of hazardous substances, and

1   (2) any other such action necessary to protect public health, welfare, and the

2   environment.  "Response and remediation costs under CERCLA" include, but are

3   not limited to, the following items of damages sought by Plaintiff:  costs incurred

4   in investigation and monitoring of the nuisance and trespass conditions affecting

5   CITY's wells and water supply; costs of remediation and treatment of extracted

6   drinking water, including well-head treatment, and costs of replacement water

7   necessary to protect the health and safety of CITY's citizens and its water supply;

8   rate increases and other measures needed to mitigate impacts of the contamination

9   (including reduction of CITY's potable water supply); and costs of increased

10  maintenance and operation (for both contaminated and non-contaminated wells).

11  7/12/04 Order at pp. 12-13.  The term "response costs" also means any costs and

12  attorneys' fees including, but not limited to, the attorneys' fees and costs

13  associated with investigating and locating the parties responsible for the

14  investigation and clean up of the environmental contamination alleged herein.

15       25.   "Solid waste," as used in this Complaint, shall have the meaning set

16  forth in RCRA § 1004(27), 42 U.S.C. § 6903(27):

17          …any garbage, refuse, sludge from a waste treatment plant, water

18          supply treatment plant, or air pollution control facility and other

19          discarded material, including solid, liquid, semisolid, or contained

20          gaseous material resulting from industrial, commercial, mining, and

21          agricultural operations, and from community activities, but does not

22          include solid or dissolved material in domestic sewage…

23                  OPERATIONS IN THE RIALTO-COLTON BASIN

24       26.   Plaintiffs CITY OF RIALTO and RIALTO UTILITY AUTHORITY

25  ("RUA") (collectively "Plaintiff" or "CITY") are, respectively, (1) a California

26  municipal corporation, general law city, and a public water agency duly organized

27  and existing under the laws of the State of California, and (2) a Joint Powers

28  Authority duly organized and existing under the laws of the State of California.  By

1    May 1, 2001, Lease and Management Agreements, CITY OF RIALTO is the

2    owner, lessor and operator of CITY's water system, the RUA has appointed CITY

3    OF RIALTO as its agent to carry out all aspects of the operation and maintenance

4    of the water system, and CITY OF RIALTO has assumed all rights, liabilities,

5    duties and responsibilities of the RUA regarding operation and management of the

6    system and administration and enforcement of all relevant contracts and other

7    agreements.  Without limitation as to the nature and scope of Plaintiff CITY's

8    affected property rights and interests, CITY owns, leases and operates certain real

9    property and drinking water supply wells that draw from, recharges and stores

10   waters in, and has valuable adjudicated and unadjudicated proprietary and other

11   interests in the natural groundwater resources of one or more contaminated

12   aquifers, as discussed in more detail above, and these valuable property rights and

13   interests, inter alia, have been and/or are being destroyed, damaged, injured and/or

14   adversely affected by the contamination that is the subject of this action.

15          27.    Plaintiff CITY is informed and believes, and based thereon alleges,

16   that Defendant UNITED STATES DEPARTMENT OF DEFENSE, formerly

17   known as the War Assets Administration ("DOD"), is, and at relevant times was,

18   an Executive Branch agency of the United States Government, headed by the

19   Secretary of Defense, and encompassing as Military Departments within it all

20   branches of the United States Military Forces, including the U.S. Army, U.S.

21   Navy, U.S. Air Force, U.S. Marine Corps and U.S. Coast Guard.  Plaintiff is

22   informed and believes, and based thereon alleges, that the DOD, including the War

23   Assets Administration, and/or its predecessor and constituent Military

24   Departments, owned and operated a facility or facilities in the RASP Area from

25   approximately 1941 to 1946, including storage bunkers (later sold and/or leased to

26   defense contractors and/or manufacturers and others using, handling, processing,

27   storing and/or disposing of perchlorate and perchlorate-containing products,

28   materials and wastes), railroad spurs, chemical weapons, explosives, munitions,

1   pyrotechnics, propellants, hot waste, discarded materials, and ordnance shipping,

2   testing, storage, and/or handling, military and target range operations, powder and

3   fuse magazines, and burning and on-site disposal and destruction operations, which

4   resulted in the disposal, discharge and release of perchlorate-containing products,

5   hazardous substances and hazardous wastes into the environment. Plaintiff is

6   informed and believes, and based thereon alleges that during DOD's operations at

7   the RASP Site over 3.5 million tons of ammunition and explosives were shipped to

8   and handled at that site. Plaintiff is informed and believes, and based thereon

9   alleges, that inter alia, Defendant DOD destroyed and disposed of defective

10   freight-damaged and/or obsolete perchlorate-containing products at the RASP Site,

11   and also disposed of and/or arranged for disposal of perchlorate-containing and

12   hazardous substances/wastes at other facilities within the RASP Area, both during

13   and after its occupancy thereof, through, inter alia, supervision, direction, control

14   and/or oversight of its contractors and subcontractors including, but not limited to,

15   GOODRICH, EMHART, WHITTAKER, ORDNANCE ASSOCIATES and

16   BROCO ENVIRONMENTAL, INC. resulting in releases and discharges of

17   perchlorate and hazardous substances/wastes into the environment as a result of

18   these activities. Plaintiff is informed and believes, and based thereon alleges, that

19   Defendant DOD further released and discharged perchlorate and hazardous

20   substances and wastes into the environment through releases into and from its

21   then-on-site septic system, open sludge bed, and from accidental releases

22   including, but not limited to, releases from fires occurring in the bunker storage

23   area. Plaintiff is informed and believes, and based thereon alleges, that the DOD's

24   on site storage bunkers continued to exist following its use and sale of the RASP

25   Area. Plaintiff is informed and believes, and based thereon alleges that, following

26   various mesne leases and conveyances involving various Defendants' ownership,

27   occupation and use of such bunkers over a period of approximately 50 years,

28   during which period DOD may also have in some capacity supervised and/or

1    exercised control over some of said production processes and activities, the

2    bunkers were ultimately acquired, razed and used as fill dirt/material by Defendant

3    COUNTY as set forth in more detail below.

4         28.    Plaintiff is informed and believes, and based thereon alleges, that

5    WEST COAST LOADING CORPORATION ("WCLC") at relevant times was a

6    California corporation, prior to its acquisition by and merger into KWIKSET

7    LOCKS, INC., AMERICAN HARDWARE CORPORATION, EMHART

8    INDUSTRIES, INC., and BLACK & DECKER INC.  Plaintiff is informed and

9    believes, and based thereon alleges, that WCLC was a DOD contractor that owned

10   and operated an approximately 160-acre facility, and that also leased and operated

11   separate facilities located within the RASP Area, between approximately 1952 and

12   1957.  Plaintiff is informed and believes, and based thereon alleges, that WCLC's

13   operations at the site, for which its corporate successors-in-interest are also liable,

14   included the design, manufacture, loading, assembly and testing of perchlorate-

15   containing products, including photoflash cartridges, detonators, simulators, fuses,

16   illuminating mortar shells, and Loki and HASP rockets, the preparation, handling,

17   storage, drying, grating, and processing of tons of raw perchlorate for these

18   products and for off-site shipment to other manufacturers, and the disposal and

19   burning of perchlorate-containing wastes and products and hazardous wastes and

20   substances in, inter alia, unlined dirt trenches, incinerators and a then-on-site

21   drainage and septic system, and that these activities, as well as numerous on-site

22   "flashes," fires, explosions and accidents resulting in the incomplete combustion

23   and disposal, discharge, release and dispersal of perchlorate-containing product

24   and hazardous substances and wastes, resulted in releases of perchlorate and

25   hazardous substances and wastes into the soils and groundwater on, under and

26   around the said 160-acre site and facilities.  Plaintiff is informed and believes, and

27   based thereon alleges, that WCLC also arranged to have perchlorate-contaminated

28   and hazardous substances/wastes disposed of at the Mid-Valley Sanitary Landfill

1    and/or with other waste handlers and processors doing business at and around the

2    RASP Site at relevant times.

3       29.    Plaintiff is informed and believes, and based thereon alleges, that

4    Defendant KWIKSET LOCKS, INC. ("KLI") was at relevant times until its

5    dissolution a California corporation, and was the corporate successor, by, inter alia,

6    acquisition and assumption of liabilities and/or de facto merger in or about 1957-

7    1958, to, and responsible for all relevant liabilities of, defendant WCLC, as alleged

8    hereinabove. Plaintiff is informed and believes and based thereon alleges, that

9    Defendant KLI for a period of time held title to the property and also engaged in

10    the same activities at the 160-acre site as alleged hereinabove as to WCLC prior to

11    its sale of the site and plant following the merger with WCLC.

12       30.    Plaintiff is informed and believes, and based thereon alleges, that

13    AMERICAN HARDWARE CORPORATION ("AHC") is, and/or at relevant

14    times was, a Connecticut Corporation with its principal place of business in

15    Connecticut. Plaintiff is informed and believes, and based thereon alleges, that all

16    of the shares of KLI were purchased by AHC on or before July 3, 1957, and that

17    KLI became a wholly owned and controlled subsidiary of AHC. Plaintiff is

18    informed and believes, and based thereon alleges, that in or about June, 1958, KLI

19    distributed its assets and its outstanding debts and obligations to AHC. AHC

20    assumed all known and unknown liabilities of KLI, contingent or otherwise, on or

21    before the dissolution of KLI by the Board of Directors of AHC in or about July

22    1958. Plaintiff is informed and believes, and based thereon alleges, that AHC is

23    and/or was the corporate successor, by, inter alia, acquisition and assumption of all

24    liabilities, including contingent unknown liabilities of KLI, merger and/or de facto

25    merger, to, and responsible for all relevant liabilities of, WCLC and KLI, all as

26    alleged above. AHC subsequently changed its name to Emhart Corporation, and

27    then to EMHART INDUSTRIES, INC., which is a defendant in this action and is

28    responsible for the liabilities of AHC.

31.     Plaintiff is informed and believes, and based thereon alleges, that Defendant EMHART INDUSTRIES, INC. ("EMHART") is and/or at relevant times was a Connecticut corporation, formerly known as AHC prior to about mid-1964, and as Emhart Corporation from approximately 1964-1976.  Plaintiff is informed and believes, and based thereon alleges, that EMHART is the corporate successor, by, inter alia, acquisition and assumption of liabilities including contingent unknown liabilities of KLI and WCLC, and/or de facto merger, to, and responsible for all relevant liabilities of, WCLC, KLI and AHC, as alleged above.

32.     Plaintiff is informed and believes, and based thereon alleges, that on or about February 28, 2002, under Defendant EMHART's Plan of Reorganization, Defendant BLACK & DECKER INC. ("BDI") a Delaware Corporation, became EMHART'S sole shareholder, and the holder of all assets of Defendant EMHART, including, but not limited to, all of EMHART'S interests, shares and equity notes.  Plaintiff is further informed and believes, and based thereon alleges, that BDI was and is the corporate successor and responsible for all relevant liability of, Defendants EMHART, and of AHC, KLI, and WCLC.

33.     Plaintiff is informed and believes, and based thereon alleges, that GOODRICH CORPORATION, doing business in California as THE NEW YORK GOODRICH CORPORATION ("GOODRICH") is, and at relevant times was, a New York Corporation with its principal place of business in North Carolina.  Plaintiff is informed and believes, and based thereon alleges, that GOODRICH was a DOD contractor that owned and operated an approximately 160-acre facility - the same facility previously owned, operated and contaminated by WCLC - and that GOODRICH also owned and/or leased and operated separate facilities located within the RASP Area, between approximately 1957 and approximately 1966.  Plaintiff is informed and believes that GOODRICH's operations at its facilities within the RASP Area included experimentation with and the formulation of perchlorate-based propellants, and the design, manufacture, loading, assembly and

1    testing of perchlorate-containing products, including, but not limited to, test

2    rockets, sounding rockets, Sidewinder missiles and/or rockets, Loki rockets, Loki

3    II rockets, HASP rockets, ASP rockets and WASP rockets.  Plaintiff is informed

4    and believes that GOODRICH's operations involved the preparation, handling,

5    storage, weighing, mixing, drying, grating and processing of tons of raw

6    perchlorate for the propellants and products it designed, manufactured and tested at

7    its facilities, and the disposal and burning of perchlorate-containing wastes and

8    products and hazardous substances/wastes in and/or on, inter alia, the bare ground,

9    unlined dirt trenches, incinerators and a then-on-site drainage and septic system.

10   Plaintiff is informed and believes, and based thereon alleges, that these activities,

11   as well as on site rocket testing, "flashes," fires, explosions and accidents which

12   resulted in the incomplete combustion and disposal, discharge, release and

13   dispersal of perchlorate-containing products and hazardous substances and wastes,

14   resulted in releases of the same into the environment, including the soils and

15   groundwater in, on, under and around the GOODRICH facilities.  Plaintiff is

16   informed and believes that GOODRICH also arranged to have perchlorate-

17   contaminated and hazardous substances/wastes disposed of at the Mid-Valley

18   Sanitary Landfill and/or with other waste handlers and processors doing business at

19   and around the RASP Site at relevant times.  GOODRICH claims a credit of

20   $100,000 for funds paid toward CITY's development of a database on perchlorate,

21   TCE, and the Rialto-Colton Basin, and up to $4,000,000 for funds paid to

22   COLTON, CITY, West Valley Water District and Fontana Water Company as a

23   set-off against any allocation or judgment pursuant to the terms of an Interim

24   Settlement Agreement dated December 31, 2002, and for this reason CITY has not

25   named GOODRICH in the claims for response costs, damages, and relief in the

26   First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Eleventh, and Twelfth

27   claims hereof.

28

1        34.     Plaintiff is informed and believes, and based thereon alleges, that

2   Defendant PYROTRONICS CORPORATION ("PYROTRONICS") was at

3   relevant times a California corporation, and that it filed Chapter 11 bankruptcy

4   proceedings in 1989, selling its RASP Area real property primarily to Defendants

5   KEN THOMPSON, INC., WONG CHUNG MING aka CHUNG MING WONG

6   and/or TUNG CHUN COMPANY, and RDF Holding Company.  Plaintiff is

7   informed and believes, and based thereon alleges that RDF Holding Company

8   purchased PYROTRONICS' trade fixtures, customer lists, equipment and

9   inventory and subsequently sold them to Pyrodyne American Corporation, which

10   later became American West, Inc. then American West Marketing, Inc., then

11   American Promotional Events, Inc., then Defendant AMERICAN

12   PROMOTIONAL EVENTS, INC. - WEST ("APE").  Plaintiff is informed and

13   believes, and based thereon alleges, that PYROTRONICS owned and operated the

14   160-acre parcel in the RASP Site from approximately 1968 through 1989, during

15   which time it also subdivided the property.  Plaintiff is informed and believes, and

16   based thereon alleges, that PYROTRONICS, also known at relevant times as Red

17   Devil Fireworks Company, Clipper Pyrotechnics, Inc., Atlas Display Company,

18   Apollo Manufacturing Company, United Fireworks Manufacturing, California

19   Fireworks Display Company, and Fireworks Display Co., operated an

20   approximately 75-building fireworks manufacturing facility on the 160 acres from

21   approximately 1968 through 1989, at which it manufactured fireworks and flares

22   containing perchlorate; that there were at least three major explosions at the

23   "United Fireworks Manufacturing" plant between 1968-1970, one of which

24   resulted in total destruction of the "press room" and one of which resulted in three

25   fatalities and the total destruction of 20 buildings; that further fires and explosions

26   at the PYROTRONICS facilities on the 160-acre RASP Site parcel occurred

27   between 1970 and 1989; that PYROTRONICS aka United Fireworks

28   Manufacturing reported using substantial quantities of potassium perchlorate in its

1    manufacturing process to COUNTY's Department of Environmental Health; and

2    that PYROTRONICS aka United Fireworks Manufacturing was licensed to keep

3    320,000 pounds of chemicals on its site at any one time. Plaintiff is informed and

4    believes, and based thereon alleges, that Defendant PYROTRONICS, which was

5    the self-proclaimed "pyrotechnist to Disneyland" beginning in approximately

6    1968, required its employees working with perchlorate to wear protective cotton

7    outer garments which were turned in to the plant laundry after each shift; washed

8    each press room down with water after each shift and disposed of the residual

9    pyrotechnic compound in a shallow, outdoor, uncovered concrete collector; swept

10   press and mixing rooms with a dry brush and "seeping compound" and burned

11   pyrotechnic compound residue in a pit; and operated a waste pond, later to become

12   known as the "McLaughlin Pit" on a portion of the 160-acre property, into which it

13   disposed of its own waste pyrotechnic materials and defective fireworks, as well as

14   pyrotechnic compound, hazardous waste and defective and off-specification

15   fireworks generated by the operations of Defendants PYRO SPECTACULARS,

16   INC. and ASTRO PYROTECHNICS, and from which 3.5 million pounds of

17   contaminated sludge materials were ultimately removed. Additionally, Plaintiff is

18   informed and believes, and based thereon alleges, that Defendant PYROTRONICS

19   leased portions of the 160-acre property to Defendant PYRO SPECTACULARS

20   and/or Defendant ASTRO PYROTECHNICS and that Defendant WONG CHUNG

21   MING currently leases the northern half of the 160-acre property to Defendants

22   APE and PYRO SPECTACULARS.

23        35.    Plaintiff is informed and believes, and based thereon alleges, that

24   Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is a governmental

25   body that is a political and legal subdivision of the State of California, subject to

26   compliance with all applicable, federal, state and local laws. Plaintiff is informed

27   and believes, and based thereon alleges, that COUNTY is, and has continuously

28   since approximately 1958 been the owner and operator of a public solid waste

1    disposal facility within the RASP Area known as the Mid-Valley Sanitary Landfill,

2    which actively accepted (for disposal in unlined earthen areas) perchlorate-

3    containing and other hazardous substances/wastes from others, including

4    defendants herein, from approximately 1958 to the present.  Plaintiff is informed

5    and believes, and based thereon alleges, that COUNTY acquired certain property,

6    consisting of approximately 96 acres within the RASP Area, in or about 1993 for

7    an expansion of the Mid-Valley Sanitary Landfill from defendants EDWARD

8    STOUT; EDWARD STOUT AS THE TRUSTEE OF THE STOUT-RODRIGUEZ

9    TRUST, aka THE SCHULZ FAMILY TRUST; ELIZABETH RODRIGUEZ;

10   JOHN CALLAGY AS TRUSTEE OF THE FREDERIKSEN CHILDREN'S

11   TRUST UNDER TRUST AGREEMENT DATED FEBRUARY 20, 1985; LINDA

12   FREDERIKSEN AS TRUSTEE OF THE E.F. SHULZ TRUST; JOHN

13   CALLAGY AS TRUSTEE OF THE E.F. SCHULZ TRUST; LINDA

14   FREDERIKSEN; LINDA FREDERIKSEN AS TRUSTEE OF THE WALTER M.

15   POINTON TRUST DATED 11/19/91; LINDA FREDERIKSEN AS TRUSTEE

16   OF THE MICHELLE ANN POINTON TRUST UNDER TRUST AGREEMENT

17   DATED FEBRUARY 15, 1985; JOHN CALLAGY; MARY MITCHELL;

18   JEANINE ELZIE; STEPHEN CALLAGY; MICHELLE ANN POINTON;

19   ANTHONY RODRIGUEZ (collectively known and referred to at times herein as

20   the "SCHULZ TRUST DEFENDANTS").  The CITY is further informed and

21   believes and based thereon alleges, that the option and purchase and sale

22   agreements between the COUNTY and the SCHULZ TRUST DEFENDANTS for

23   the purchase and sale of this property discussed the possibility of its contamination

24   with hazardous or toxic substances, materials or waste and require the COUNTY to

25   indemnify the SCHULZ TRUST DEFENDANTS in the event of lawsuits relating

26   to the same.  Plaintiff is informed and believes, and based thereon alleges, that

27   COUNTY in or about 1999 further expanded its Mid-Valley Sanitary Landfill by

28   demolishing and razing former DOD military bunkers within the RASP Area and

1    importing and using perchlorate-contaminated soils and fill materials from those

2    bunkers to construct expanded landfill areas, from which perchlorate leached into

3    subsurface soils and groundwater.  Plaintiff is informed and believes, and based

4    thereon alleges, that COUNTY owns other property adjacent to or near the Mid-

5    Valley Sanitary Landfill upon which rocket propellant and explosives

6    manufacturers, fireworks manufacturers, hazardous waste disposal facility

7    operators, and defense contractors who handled perchlorate and caused hazardous

8    substances/wastes to be released into the environment formerly operated, and that

9    gravel washing operations conducted by Defendant ROBERTSON'S READY

10   MIX, INC., and/or others, and arranged by Defendant COUNTY on COUNTY's

11   adjacent property, have further caused and contributed to releases of perchlorate

12   into the environment at the RASP Site.

13       36.     Plaintiff is informed and believes, and based thereon alleges, that

14   Defendant ROBERTSON'S READY MIX, INC. ("RRM") is a California

15   corporation, and is currently, and since approximately 1998 has been, actively

16   engaged in the mining and removal of aggregate soil and mining overburden from

17   the RASP Area to depths of up to approximately 200 feet, and that the aforesaid

18   removed aggregate, soil and mining overburden are already contaminated with

19   perchlorate and hazardous substances/wastes from the past activities of others,

20   including Defendants herein, at the RASP Site.  Plaintiff is informed and believes,

21   and based thereon alleges, that at relevant times during its operations in the RASP

22   Area Defendant RRM hauled the contaminated materials to a stockpile area facility

23   located in the RASP Site, and washed them with large quantities of water in

24   unlined wash ponds in the location of and/or constructed with materials from the

25   former DOD bunker area as part of a process used to produce specification grade

26   concrete and asphalt aggregate and sands for road base materials.  Plaintiff is

27   informed and believes, and based thereon alleges, that, during defendant RRM's

28   on-site water wash process, perchlorate and hazardous substances/wastes already

1    present in the contaminated aggregate soils and materials from in and around the

2    former bunker area dissolved in and contaminated the wash water, which was then

3    released into and/or percolated through the soils and thereafter through downward

4    percolation into the underlying groundwater in the contaminated aquifer/s.

5    Plaintiff is informed and believes, and based thereon alleges, that RRM used large

6    quantities of water—up to 460-acre feet of water per year—and that RRM was

7    required by agreement to percolate the contaminated wash water back into the

8    underlying aquifer/s, and that RRM from approximately 1998 to July 2003 did not

9    export the used and contaminated wash water off site for other use or treatment to

10   remove perchlorate.  Plaintiff is informed and believes, and based thereon alleges,

11   that the areas underlying and affected by RRM's washing operations which overlay

12   the contaminated aquifer/s, consist of porous alluvial material through which the

13   perchlorate-contaminated wash water released into the environment rapidly

14   percolated and moved.  Plaintiff is informed and believes, and based thereon

15   alleges, that perchlorate and hazardous substances/wastes also are, and have been,

16   released into the environment by other aspects of RRM's mining and processing

17   operations, including, but not limited to, removing the contaminated aggregate

18   materials from the ground, transporting them around the site, and storing them in

19   the stockpile areas, and that in 2001, groundwater samples from Well F-6 on the

20   RRM Site in the RASP Area went from "non-detect" to a level of 1000 ppb of

21   perchlorate.

22          37.    Plaintiff is informed and believes, and based thereon alleges, that

23   Defendant BROCO ENVIRONMENTAL, INC. ("BROCO") is a suspended

24   California corporation that owned and/or operated and/or leased several facilities

25   in the RASP Area, where it engaged in the manufacture of perchlorate-containing

26   products, and the acceptance, treatment, handling, storage, testing and disposal of

27   hazardous wastes and substances containing, inter alia, perchlorate, from

28   approximately 1966 through 2002.  Plaintiff is informed and believes, and based

1    thereon alleges, that, inter alia, Defendant BROCO also stored perchlorate-

2    containing hazardous wastes at its facilities; accepted shipments of perchlorate-

3    containing hazardous wastes from generators (including defendant DOD, rocket,

4    fireworks and explosives manufacturers and defense contractors) and other parties

5    for storage, treatment and disposal; stored perchlorate-containing hazardous wastes

6    at its facilities in open containers and cardboard boxes (thus exposing them directly

7    to the elements and causing their release into the soil and groundwater); and

8    disposed of perchlorate-containing wastes in open burn pits, by detonation, and by

9    mixing them with other hazardous wastes and releasing them onto the soil and into

10   the groundwater in the RASP Area and elsewhere.  Plaintiff is informed and

11   believes, and based thereon alleges, that BROCO also arranged for perchlorate-

12   contaminated and hazardous wastes, cleaning products and other items associated

13   with operation of its facilities to be disposed of at COUNTY's nearby Mid-Valley

14   Sanitary Landfill site in the RASP Area.  Plaintiff is informed and believes, and

15   based thereon alleges, that BROCO also caused releases of perchlorate and

16   hazardous substances/wastes into the soils and groundwater during the same time

17   period through its then-on-site septic system.

18       38.    Plaintiff is informed and believes, and based thereon alleges, that

19   Defendant DENOVA ENVIRONMENTAL, INC.  ("DENOVA") is and/or at

20   relevant times was a California corporation and a corporate successor-in-interest to

21   Defendant BROCO, and also engaged in the same actions and omissions in the

22   same time frame alleged hereinabove as to BROCO.

23       39.    Plaintiff is informed and believes, and based thereon alleges, that

24   Defendant ENVIRONMENTAL ENTERPRISES, INC., is an Ohio corporation

25   currently doing business in California, is a corporate successor to Defendants

26   BROCO and DENOVA, engaged in the same actions and omissions in the same

27   time frame alleged hereinabove as to BROCO, and is also responsible for the

28   relevant liabilities of BROCO and DENOVA.

1    40.    Plaintiff is informed and believes, and based thereon alleges, that

2  Defendant AMERICAN PROMOTIONAL EVENTS, INC. - WEST ("APE") is an

3  Alabama corporation and that it and/or its corporate predecessors and affiliates for

4  whose liabilities it is responsible, including, but not limited to Pyrodyne American

5  Corporation, American Pyrodyne Corporation, American West, Inc., American

6  Promotional Events, Inc., Freedom Fireworks, Inc., and American West

7  Marketing, Inc., leased, controlled and/or occupied a facility and/or parcel of real

8  property located at 3196 North Locust Street in Rialto, which is part of the RASP

9  Area, from approximately 1989 through the present.  Plaintiff is informed and

10  believes, and based thereon alleges, that Defendant APE is, and has since 1989

11  been, an importer, wholesaler and distributor of fireworks products that contain

12  perchlorate; that since 1989 APE has handled, used and stored perchlorate-

13  containing products at its RASP Area facility; that APE has performed on-site

14  testing of various fireworks products containing perchlorate; and that APE has

15  accepted return shipments of unpackaged, defective and unused perchlorate-

16  containing fireworks from customers at its RASP Area facility.  APE's handling,

17  use, storage and testing of fireworks products containing perchlorate resulted in the

18  release of perchlorate and/or hazardous substances into the soil and/or groundwater

19  at the RASP Site.  Plaintiff is informed and believes, and based thereon alleges,

20  that APE and/or its predecessors used the McLaughlin Pit for the disposal of

21  hazardous substances/wastes including, inter alia, perchlorate, and that APE and/or

22  its predecessors and/or others used the McLaughlin Pit to dispose of scrap

23  materials, defective and/or unsafe products, returned products and other

24  perchlorate-containing and hazardous wastes generated by its/their operations,

25  including, but not limited to, its/their fireworks testing and return receipt

26  operations.  Plaintiff is informed and believes, and based thereon alleges, that a

27  former burn pit area controlled by APE and/or its predecessors or others, and

28  located on APE's RASP Area facility, has recently been tested for perchlorate by

1    APE's environmental consultants under order of the Santa Ana RWQCB, and that

2    said investigation has revealed substantial perchlorate contamination (up to 2,900

3    ppb) in those soils. Plaintiff is informed and believes, and based thereon alleges,

4    that APE and/or its corporate predecessors and affiliates regularly burned hundreds

5    of pounds of pyrotechnic wastes at the RASP Site, and perchlorate-containing and

6    hazardous substances/wastes were also released into the environment through

7    APE's on-site septic system from 1989 through the present. Plaintiff is informed

8    and believes, and based thereon alleges, that Defendant APE also arranged to have

9    its perchlorate-contaminated wastes disposed of at the Mid-Valley Sanitary

10    Landfill and/or with other waste handlers and processors doing business on the

11    RASP Site during the period from 1989 to the present.

12        41.    Plaintiff is informed and believes, and based thereon alleges, that

13    Defendant PYRO SPECTACULARS, INC. ("PYRO") is a California corporation

14    that has at relevant times, from approximately 1979 through the present, owned,

15    leased and/or operated facilities located at 3196 North Locust Avenue and/or 2298

16    West Stonehurst in Rialto, which are 25-acre and 5-acre sites, respectively, located

17    in the RASP Area. Plaintiff is informed and believes, and based thereon alleges,

18    that Defendant PYRO, and related corporate entities and affiliates (including, but

19    not limited to, Defendants TROJAN FIREWORKS and ASTRO

20    PYROTECHNICS, INC.) owned and/or operated facilities at the aforesaid

21    locations at which perchlorate in chemical form, pyrotechnic compositions

22    containing perchlorate and/or products containing perchlorate were received,

23    handled, stored, assembled, manufactured, burned, disposed of, and tested, some of

24    which activities occurred in partnership with the former California Fireworks

25    Display Company and/or Defendants APE and/or PYROTRONICS, and that these

26    activities, for which PYRO is legally responsible, caused a release of perchlorate

27    and/or hazardous substances into the soil and/or groundwater at the RASP Site.

28    Plaintiff is informed and believes, and based thereon alleges that PYRO stored

1   "hot" perchlorate wastes on one or both of its sites and that PYRO and/or its

2   corporate predecessors and/or affiliates regularly burned hundreds of pounds of

3   pyrotechnic wastes at the RASP Site, resulting in incomplete combustion,

4   dispersal, releases and discharges of perchlorate and hazardous substances/wastes

5   into the soil and/or groundwater at the RASP Site.  Plaintiff is informed and

6   believes, and based thereon alleges, that Defendant PYRO used the aforesaid

7   properties through at least 2004 for the handling of perchlorate and perchlorate-

8   containing products, and for the manufacture, assembly and storage of large-scale

9   and consumer fireworks.  Plaintiff is informed and believes, and based thereon

10   alleges, that Defendant PYRO disposed of pyrotechnic composition and defective

11   and obsolete perchlorate-containing products in the McLaughlin Pit at the RASP

12   Site facilities; collected and stored perchlorate-contaminated and hazardous wastes,

13   including wash water, accumulated liquids and sludge wastes generated during the

14   fireworks manufacturing process, on concrete pads located outside of and adjacent

15   to its work buildings, which pads overflowed and/or leaked onto the soil and/or

16   groundwater at the RASP Site; since the 1970s stored perchlorate-containing

17   products in cardboard boxes and paper and plastic drums (thus exposing them

18   directly to the elements and causing their release into the soil and groundwater);

19   and accepted and accepts return shipments of unpackaged, defective and unused

20   perchlorate-containing fireworks from its customers at its facilities in the RASP

21   Site.  Plaintiff is informed and believes, and based thereon alleges, that, to dispose

22   of scrap materials, defective and/or unsafe products, returned products and other

23   hazardous substances/wastes, including wastes containing perchlorate generated by

24   its operations, PYRO also burned pyrotechnic composition and products

25   containing perchlorate in a burn pit located at its 3196 North Locust Street facility,

26   at a burn pit located at its 2298 Stonehurst facility and at burn pits located in and

27   around the B-1 Bunker, all located within the RASP Site.  Plaintiff is informed and

28   believes and thereon alleges that PYRO's burning caused the release of perchlorate

- 28 -

1    and/or hazardous substances into the soil and/or groundwater at the RASP Site.

2    Plaintiff is informed and believes, and based thereon alleges, that PYRO's on-site

3    septic system also released perchlorate-contaminated and hazardous wastes into the

4    environment from 1979 through the present, and that PYRO also arranged during

5    that time period for its perchlorate-contaminated and hazardous wastes to be

6    disposed of at COUNTY's Mid-Valley Sanitary Landfill and/or with other waste

7    handlers and processors doing business on the RASP Site in this time period.

8    Plaintiff is informed and believes, and based thereon alleges, that recent

9    investigations conducted by PYRO's consultants under order of the Santa Ana

10   RWQCB have revealed high concentrations (up to approximately 32,000 ppb) of

11   perchlorate in the soils at PYRO's RASP Area facilities.

12        42.    Plaintiff is informed and believes and thereon alleges that Defendants

13   APE and PYRO operate in some of the original WCLC buildings that Defendant

14   PYROTRONICS converted to fireworks manufacturing use.  Plaintiff is informed

15   and believes, and based thereon alleges, that Defendant PYROTRONICS' acts and

16   omissions resulted in releases and discharges of perchlorate and hazardous

17   substances/wastes to the soils and underlying groundwater at and from its RASP

18   Site facilities.

19        43.    Plaintiff is informed and believes, and based thereon alleges, that

20   Defendant TROJAN FIREWORKS ("TROJAN") is a dissolved California

21   corporation and engaged in fireworks manufacturing at the RASP site from

22   approximately 1974 through 1987, and engaged in the same actions and omissions

23   alleged herein as to PYROTRONICS, PYRO and ASTRO at relevant times.

24   Between 1972 and 1988, TROJAN was a California corporation, which operated a

25   facility at 2298 Stonehurst in the RASP Site and in the military bunker complex

26   area near Bunker B-1, at which it handled, used, tested, burned and manufactured

27   pyrotechnic composition and/or products containing perchlorate, and that

28   TROJAN's operations caused a release of perchlorate and/or hazardous substances

1   into the soil and/or groundwater at the RASP Site.  Plaintiff is informed and

2   believes and thereon alleges that TROJAN tested fireworks and/or other products

3   containing perchlorate at its facilities, and burned waste pyrotechnic composition

4   and defective fireworks containing perchlorate on the bare earth and in earthen

5   burn pits located at its facilities, and that these operations caused a release of

6   perchlorate and/or hazardous substances into the soil and/or groundwater at the

7   RASP Site.  Plaintiff is informed and believes and thereon alleges that explosions,

8   fires and/or accidents at the TROJAN facilities caused a release of perchlorate

9   and/or hazardous substances into the soil and/or groundwater at its RASP Site

10  facilities.  Plaintiff is informed and believes and thereon alleges that TROJAN used

11  water to wash down its manufacturing buildings in which pyrotechnic compounds

12  containing perchlorate were weighed, screened, mixed and otherwise processed, on

13  a nearly daily basis, and that the perchlorate-containing slurry wastes were

14  collected outside of the manufacturing buildings in sludge collectors that

15  overflowed from time to time, causing releases of perchlorate and/or hazardous

16  substances into the soil and/or groundwater at the RASP Site.  Plaintiff is informed

17  and believes and thereon alleges that TROJAN collected and stored slurry wastes

18  and other manufacturing wastes containing perchlorate in cardboard and/or paper

19  containers, exposing them directly to the environment, and burned these same

20  wastes at its facility, causing a release of perchlorate and/or hazardous substances

21  into the soil and/or groundwater at the RASP Site.

22      44.    Plaintiff is informed and believes, and based thereon alleges, that

23  Defendant ASTRO PYROTECHNICS, INC.  ("ASTRO") was at relevant times a

24  California corporation and a corporate predecessor, successor and/or affiliate of

25  Defendants PYRO and/or TROJAN, and engaged in the same actions and

26  omissions in the same time frames alleged hereinabove as to PYRO and/or

27  TROJAN.  Plaintiff is informed and believes, and based thereon alleges, that on or

28  about June 2, 2004, a fire occurred at Defendant ASTRO's commercial RASP

1   Area facility at 2298 West Stonehurst Drive, which released and discharged

2   hazardous substances/wastes, including perchlorate, into the environment and soils

3   surrounding the burned building.

4       45.    Plaintiff is informed and believes, and based thereon alleges, that

5   Defendant ZAMBELLI FIREWORKS MANUFACTURING CO., aka Zambelli

6   Fireworks Internationale and Zambelli Fireworks Manufacturing Co., Inc., is and

7   at relevant times was a Pennsylvania corporation, and that it and/or its corporate

8   predecessors for whose actions and liabilities it is responsible ("ZAMBELLI"),

9   leased, rented, controlled and/or occupied a munitions storage bunker and

10  fireworks manufacturing plant on property located at 2170 West Stonehurst Drive

11  in Rialto, which is within the RASP Area, from approximately 1982 (or earlier)

12  through 1991.  Plaintiff is informed and believes, and based thereon alleges, that

13  during its period of occupation and use of the property, Defendant ZAMBELLI

14  manufactured, distributed, stored and sold wholesale on and from that site

15  fireworks products containing perchlorate.  Plaintiff is informed and believes, and

16  based thereon alleges, that as part of ZAMBELLI's on-site manufacturing

17  activities, it handled raw perchlorate salts, tested fireworks, and accepted (as it was

18  required to do under federal law) return shipments of defective, unpackaged and

19  unused perchlorate-containing fireworks products from its customers.  Plaintiff is

20  informed and believes, and based thereon alleges, that Defendant ZAMBELLI

21  released perchlorate and hazardous substances/wastes into the environment

22  through its manufacturing, maintenance, and other activities on the site, as well as

23  through its then-on-site septic system, between approximately 1982 and 1991, and

24  that it also arranged to have its perchlorate-contaminated and hazardous wastes

25  disposed of at Defendant COUNTY's Mid-Valley Sanitary Landfill and/or with

26  other waste handlers and processors doing business on the RASP Site during this

27  time period.

28

1    46.    Plaintiff is informed and believes, and based thereon alleges, that

2  Defendant RAYTHEON COMPANY is and at relevant times was a Delaware

3  corporation and that it, and its corporate predecessors-in-interest, for whose

4  liabilities it is responsible (collectively, "RAYTHEON"), leased from Defendant

5  BROCO, certain property located at 2824 North Locust Street, within the RASP

6  Area, from approximately 1984 through 1994, and purchased Hughes Missile

7  Systems in 1998.  Plaintiff is informed and believes, and based thereon alleges,

8  that between 1984 and 1994, Defendant RAYTHEON (and/or its corporate

9  predecessors, for whose acts and omissions RAYTHEON is also subject to

10  liability) handled, stored and arranged for the disposal of perchlorate-containing

11  products, including, but not limited to, squibs, detonators, toy rocket motors,

12  ammunition, cartridges, chords, fuses, initiators, actuators and propellants, and

13  accepted shipment of returned defective and/or obsolete products at the 2824 North

14  Locust Street facility.  Plaintiff is informed and believes, and based thereon

15  alleges, that Defendant RAYTHEON arranged for some or all of these perchlorate-

16  containing products to be disposed of at Defendant BROCO's RASP Area site

17  and/or Defendant COUNTY's Mid-Valley Sanitary Landfill, where perchlorate

18  was released from them into the environment.  Plaintiff is informed and believes,

19  and based thereon alleges, that on one or more occasions between 1984 and 1994,

20  as a result of RAYTHEON's above-described activities at its facility, and

21  including releases from its on-site septic system, Defendant RAYTHEON released

22  hazardous substances/wastes, including perchlorate, into the environment within

23  the RASP Site.

24    47.    Plaintiff is informed and believes, and based thereon alleges, that

25  Defendant GENERAL DYNAMICS CORPORATION is and at relevant times was

26  a Delaware corporation, and is a corporate predecessor of Defendant

27  RAYTHEON, and engaged in the same actions and omissions in the same time

28  frame alleged hereinabove as to RAYTHEON.  Plaintiff is informed and believes,

1   and based thereon alleges, that in or about 1992, GENERAL DYNAMICS

2   CORPORATION sold its General Dynamics Air Systems Division to Defendant

3   RAYTHEON, which continued to operate that division until 1994.

4      48.   Plaintiff is informed and believes, and based thereon alleges, that

5   Defendant HUGHES AIRCRAFT COMPANY is and at relevant times was a

6   Delaware corporation, and is a corporate predecessor of Defendant RAYTHEON,

7   and engaged in the same actions and omissions in the same time frame alleged

8   hereinabove as to RAYTHEON.  Plaintiff is informed and believes, and based

9   thereon alleges, that in approximately 1992, Defendant HUGHES AIRCRAFT

10  COMPANY sold its Hughes Missile Systems division to Defendant RAYTHEON,

11  which continued to operate that division until 1994.

12     49.   Plaintiff is informed and believes, and based thereon alleges, that

13  Defendant TUNG CHUN COMPANY is and at relevant times was a business

14  entity of unknown form, and has since 1988 been owner and lessor of a facility

15  located at 3196 North Locust Avenue (APNs 0239-192-16 and 0239-192-18) in

16  Rialto, within the RASP Site.  Plaintiff is informed and believes, and based thereon

17  alleges, that prior to its acquisition by the TUNG CHUN COMPANY and/or

18  Defendant WONG CHUNG MING aka CHUNG MING WONG ("MING"), the

19  aforesaid property was part of a larger property and facility owned and operated by

20  Defendant PYROTRONICS CORPORATION, a wholesale and retail fireworks

21  manufacturer that handled, stored, tested, burned and disposed of defective and

22  obsolete products, as well as waste from its manufacturing process there between

23  approximately 1969 and 1987, and that these activities resulted in releases of

24  hazardous substances/wastes, including perchlorate, to the environment at the

25  RASP Site.  Plaintiff is informed and believes, and based thereon alleges, that

26  PYROTRONICS CORPORATION used up to 25,000 pounds of potassium

27  perchlorate per month during its 18-year tenure as a fireworks manufacturer at the

28  RASP Site property transferred to Defendants TUNG CHUN COMPANY and/or

1    MING, and disposed of perchlorate-containing and hazardous wastes, and

2    defective and unused products in unlined disposal pits and ponds, in its on-site

3    septic system, and by burning them.  Plaintiff is informed and believes, and based

4    thereon alleges, that accidental fires and explosions at PYROTRONICS also

5    resulted in the release of hazardous substances/wastes, including perchlorate, to the

6    environment at the RASP Site.  Plaintiff is informed and believes, and based

7    thereon alleges, that at various times between 1988 and the present, Defendant

8    TUNG CHUN COMPANY leased, and continues to lease, the 3196 North Locust

9    Avenue property and facilities to Defendant APE, Defendant PYRO, and/or their

10   predecessors/affiliates, and/or other fireworks and pyrotechnics businesses.

11   Plaintiff is informed and believes, and based thereon alleges, that TUNG CHUN

12   COMPANY's lessees included fireworks and pyrotechnics manufacturers and

13   wholesalers who handled, stored, manufactured, burned, tested and disposed of

14   defective and obsolete products containing perchlorate at the 3196 North Locust

15   Avenue property between 1988 and the present, resulting in releases of hazardous

16   substances/wastes, including perchlorate, into the environment at the RASP Site.

17   Plaintiff is informed and believes, and based thereon alleges, that such lessees

18   accepted and accept return shipments of unpackaged, defective, and unused

19   perchlorate-containing fireworks from their customers, and disposed and dispose

20   of perchlorate-containing products, hazardous wastes and materials into an unlined

21   disposal pit on the 3196 North Locust Avenue property; they also collected and

22   stored perchlorate-contaminated and hazardous wastes on outdoor concrete pads,

23   which would leak and overflow during storm events and at other times, releasing

24   hazardous substances/wastes, including perchlorate, into adjacent soils; and they

25   also released perchlorate into the environment through the on-site septic system

26   from 1988 through the present.

27        50.    Plaintiff is informed and believes, and based thereon alleges, that

28   Defendant WONG CHUNG MING aka CHUNG MING WONG ("MING") is an

1   individual residing in Hong Kong, but owning real property and doing business in

2   the State of California.  Since 1988, Defendant MING has been an owner and

3   lessor of the facility located at 3196 North Locust Avenue (including APNs 0239-

4   192-16 and 0239-192-18) in Rialto, within the RASP Site, in the same manner as,

5   and is responsible as an owner of that facility for the same acts and omissions

6   hereinabove alleged as to, Defendant TUNG CHUN COMPANY.

7        51.    Plaintiff is informed and believes, and based thereon alleges, that

8   Defendant WHITTAKER CORPORATION ("WHITTAKER") is a Delaware

9   corporation, that it is a corporate successor in interest to, and legally responsible

10  for the liabilities of DELTA T, INC., which was previously known as American

11  Explosives Company and AMEX Products, Inc. and Tasker Industries, Inc., which

12  was merged into Defendant WHITTAKER.  WHITTAKER owned and/or operated

13  properties and facilities located at 2298 West Stonehurst Drive, in the Military

14  Bunker Complex and on Alder Street in Rialto within the RASP Area, from

15  approximately 1964 through 1974, and operated the facilities on these properties at

16  which perchlorate-containing military and commercial pyrotechnic and explosive

17  devices were designed, tested, fabricated and stored.  Plaintiff is informed and

18  believes, and based thereon alleges, that Defendant WHITTAKER manufactured,

19  designed, tested, handled, stored and arranged for disposal of numerous products

20  containing perchlorate, including, but not limited to, a variety of flares and

21  explosive signaling devices, reflectors, mortars, launchers, rocket heads, rockets,

22  squibs, detonators, chords, fuses, initiators, actuators, pyrotechnics and propellants,

23  at its RASP Area properties during the 1964 to 1974 time period.  Plaintiff is

24  informed and believes, and based thereon alleges, that WHITTAKER's on-site

25  facilities included a chemical laboratory and powder-mixing building at which it

26  processed and mixed chemicals, including perchlorate, for use in its products; and

27  that WHITTAKER also dried perchlorate for use in its products, assembled

28  explosive devices containing perchlorate, and tested explosives and rockets at a 15-

1   acre test range (northwest of the AMEX plant on Alder Street) that included a

2   permanent test stand. Plaintiff is informed and believes, and based thereon alleges,

3   that Defendant WHITTAKER accepted shipments of returned defective and/or

4   obsolete products, and arranged for disposal of some or all of these perchlorate-

5   contaminated products, and of operational wastes containing perchlorate and

6   hazardous substances/wastes, at Defendant BROCO's site and/or Defendant

7   COUNTY's Mid-Valley Sanitary Landfill where perchlorate from them was

8   released into the environment. Plaintiff is informed and believes, and based

9   thereon alleges, that Defendant WHITTAKER regularly burned its perchlorate-

10   containing and hazardous wastes in earthen burn areas and/or pits at its RASP Area

11   facilities, causing perchlorate and hazardous substances/wastes to be released into

12   the environment, and that fires and explosions at WHITTAKER's facilities caused

13   further releases of perchlorate and hazardous substances/wastes into the

14   environment at the RASP Site. Plaintiff is informed and believes that

15   WHITTAKER tested its perchlorate-containing products on the bare ground at its

16   RASP Area facilities, causing the release of perchlorate and/or hazardous

17   substances into the environment.

18       52.   Plaintiff is informed and believes, and based thereon alleges, that

19   Defendant DELTA T., INC. was a California Corporation and is liable for the

20   same actions, omissions, and reasons as Defendant WHITTAKER.

21       53.   Plaintiff is informed and believes, and based thereon alleges, that

22   Defendant E.T.I. EXPLOSIVES TECHNOLOGIES, INC. OF CALIFORNIA, is

23   and at relevant times was a Delaware corporation, and that it and its corporate

24   predecessors, successors, affiliates and/or subsidiaries, for whose actions and

25   liabilities it is responsible (collectively "ETI") owned and/or conducted operations

26   (described in more detail below) on, properties located at 2900 N. Tamarind

27   Avenue, and at North Highland/Stonehurst and Alder Avenues in Rialto, within the

28   RASP Site, from approximately 1983 through 1997, whereby perchlorate and

1    hazardous substances/wastes were discharged into the soils and underlying

2    groundwater in the RASP Area.  Plaintiff is informed and believes, and based

3    thereon alleges, that Defendant ETI operated facilities on these properties at which

4    it designed, tested, fabricated, and stored military and commercial pyrotechnic and

5    explosive devices that contained perchlorate during this time frame.  Plaintiff is

6    informed and believes, and based thereon alleges, that ETI manufactured,

7    designed, tested, burned, detonated, handled, stored, distributed and arranged for

8    disposal of numerous perchlorate-containing products including, but not limited to,

9    various oxidizers, blasting agents, detonators, boosters, detonator chords, and

10   safety fuses at its facilities; ETI commonly handled several thousand "Electric

11   Super Detonators" and "Primadet Detonators," each of which contained potassium

12   perchlorate, at its facilities each month.  Plaintiff is informed and believes, and

13   based thereon alleges, that ETI was permitted to store up to 300,000 pounds of

14   explosives and other hazardous materials at its facilities at any given time during

15   the relevant time period; that ETI also accepted shipments of returned defective

16   and/or obsolete products at its sites, and arranged for some or all of its perchlorate-

17   containing products and operational hazardous wastes to be disposed of at

18   Defendant BROCO's site and/or Defendant COUNTY's Mid-Valley Sanitary

19   Landfill; and that ETI additionally released perchlorate-contaminated and

20   hazardous substances/wastes into the environment through its on-site septic

21   system.

22         54.    Plaintiff is informed and believes, and based thereon alleges, that

23   Defendant AMERICAN WEST EXPLOSIVES at relevant times was a Delaware

24   corporation, and a corporate predecessor, successor, affiliate and/or subsidiary of

25   Defendant ETI, and is responsible for and/or engaged in the same actions and

26   omissions in the same time frame alleged hereinabove as to ETI.

27         55.    Plaintiff is informed and believes, and based thereon alleges, that

28   Defendant GOLDEN STATE EXPLOSIVES at relevant times was a California

1   corporation, and a corporate predecessor, successor, affiliate and/or subsidiary of

2   Defendant ETI, and is responsible for and/or engaged in the same actions and

3   omissions in the same time frame alleged hereinabove as to ETI.

4        56.   Plaintiff is informed and believes, and based thereon alleges, that

5   SCHULZ TRUST DEFENDANTS and their predecessors, trustor/s, beneficiaries

6   and/or affiliates for whose acts and omissions they are responsible, including, but

7   not limited to, Edward F. Schulz, the Estate of Edward F. Schulz, and the Schulz

8   Family Trust (collectively the "SCHULZ TRUST DEFENDANTS") own and/or

9   owned at relevant times since 1947 approximately 100 acres of land in the RASP

10  Area, comprised of an irregularly-shaped group of parcels located in the west

11  central portion of Section 28, and the northeast portion of Section 29, of Township

12  North, Range 5 West, San Bernardino Baseline and Meridian (SB B&M) in Rialto.

13  Plaintiff is informed and believes, and based thereon alleges, that the SCHULZ

14  TRUST DEFENDANTS, beginning in about 1950, leased portions of the 100 acres

15  to a series of companies that manufactured, assembled, tested and stored

16  pyrotechnic devices, fireworks, rockets, rocket propellants and/or explosives

17  containing perchlorate; and that these companies included but were not limited to,

18  Defendants BROCO, ETI, and ZAMBELLI FIREWORKS.  Plaintiff is informed

19  and believes, and based thereon alleges, that these and possibly other fireworks and

20  rocket manufacturers, and defense contractors, handled, stored, manufactured,

21  burned, and tested products containing perchlorate at the SCHULZ TRUST

22  DEFENDANTS' property between about 1950 and the present, and that some still

23  currently use the property for the assembly and storage of large-scale fireworks.

24  Plaintiff is informed and believes, and based thereon alleges, that many or all of

25  these companies have disposed of defective and obsolete products containing

26  perchlorate and hazardous substances/wastes directly onto the ground and/or in an

27  unlined earthen disposal pit or pits on the Schultz Trust Defendants' property,

28  causing the hazardous substances to be released into the environment almost

1   continuously since the early 1950s; that some or all of said lessee companies have
2   obtained burning permits, and have test-fired and burned perchlorate-containing
3   products openly on the property, causing perchlorate and hazardous
4   substances/wastes to be released into the environment almost continuously since
5   the early 1950s; and that some or all of said lessee companies also disposed of
6   and/or stored for disposal perchlorate-contaminated and hazardous wastes on
7   concrete pads, which leak and overflow during storm events and at other times,
8   thereby releasing perchlorate and hazardous substances/wastes onto the ground and
9   into the environment.  Plaintiff is informed and believes, and based thereon alleges,
10  that the SCHULZ TRUST DEFENDANTS and/or their lessee companies also
11  arranged for disposal of perchlorate-contaminated and hazardous wastes at
12  Defendant BROCO's facility and/or Defendant COUNTY's Mid-Valley Sanitary
13  Landfill during the SCHULZ TRUST DEFENDANTS' ownership, maintenance
14  and management of the properties they owned and leased.  The negligence, and
15  other allegations of this Complaint against Defendants generally, unless otherwise
16  expressly stated, apply specifically to the trustees of the Schulz Trust named
17  herein, with respect to their ownership, management, use and control of their
18  relevant RASP Area properties.

19          57.     Plaintiff is informed and believes, and based thereon alleges, that
20  Defendant ENSIGN-BICKFORD COMPANY ("ENSIGN-BICKFORD") is and at
21  relevant times was a Connecticut corporation, and that it and/or its corporate
22  predecessor ORDNANCE ASSOCIATES leased and operated a facility at the
23  RASP Site from approximately 1964 through 1966, at which it designed, tested,
24  and manufactured rockets, missiles, and/or other aerospace-industry products
25  and/or components, the propellants for and/or contents of which contained
26  perchlorate.  Plaintiff is informed and believes, and based thereon alleges, that
27  Defendant ENSIGN-BICKFORD, and/or its corporate affiliates and/or
28  predecessors, manufactured, designed, tested, handled, stored and arranged for

1  disposal of perchlorate-containing products for the U.S. Army (a military
2  department of Defendant DOD), NASA and other defense and aerospace industry
3  entities during its occupancy of the RASP Site; that Defendant ENSIGN-
4  BICKFORD has a long history of explosives manufacturing and aerospace product
5  research and development; that rocket and missile fuels are commonly comprised
6  of up to 90% perchlorate salts by dry weight; that up to 70% (by dry weight) of
7  spacecraft propellant is comprised of perchlorate salts; that a single rocket launch
8  into space requires up to 700,000 pounds of perchlorate propellant; that one of the
9  projects for which Defendant ENSIGN-BICKFORD handled and used perchlorate
10 at the RASP Site was the Gemini Space Program; that Defendant ENSIGN-
11 BICKFORD was the primary pyrotechnics contractor for the Gemini project and
12 was responsible for the design, testing and manufacturing of pyrotechnic
13 separation devices for the spacecraft; and that Defendant ENSIGN-BICKFORD
14 also manufactured reefing line cutters, electrical squibs, igniters, and time delay
15 fuses at the RASP Site, all of which contained perchlorate. Plaintiff is informed
16 and believes, and based thereon alleges, that Defendant ENSIGN-BICKFORD also
17 disposed of some of its perchlorate-contaminated and hazardous substances/wastes
18 through its on-site septic system and/or at the Defendant BROCO's site and/or
19 Defendant COUNTY's Mid-Valley Sanitary Landfill during its operations at the
20 RASP Site.

21      58.   Plaintiff is informed and believes, and based thereon alleges, that
22 Defendant ORDNANCE ASSOCIATES at relevant times was a California
23 corporation, and that it was a corporate affiliate and/or predecessor in interest of
24 Defendant ENSIGN-BICKFORD, and is responsible for and/or engaged in the
25 same actions and omissions in the same time frame alleged hereinabove as to
26 Defendant ENSIGN-BICKFORD.

27      59.   Plaintiff is informed and believes, and based thereon alleges, that
28 Defendants THOMAS O. PETERS and/or THOMAS O. PETERS REVOCABLE

1   TRUST (collectively "PETERS") is and/or at relevant times was an

2   individual/revocable trust who owns, and/or who previously owned and/or

3   operated facilities at, three parcels of real property (APNs 1133-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,

4   1133-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 and 1133-071-007-0000), commonly referred to as 2298

5   Stonehurst in Rialto, and located within the RASP Site.  Plaintiff is informed and

6   believes, and based thereon alleges, that from approximately 1973 through 1988,

7   PETERS owned and operated Defendant TROJAN FIREWORKS on this property,

8   and also leased from the SCHULZ TRUST DEFENDANTS and operated nearby

9   former military bunkers at which he engaged in fireworks manufacturing activities,

10  and since 1988 has leased his RASP Area properties to other fireworks

11  manufacturers.  Plaintiff is informed and believes, and based thereon alleges, that

12  Defendant PETERS owned and/or operated facilities at which perchlorate-

13  containing products were handled, stored, manufactured, burned and tested

14  between 1973 and 1988, and now owns property in the RASP Area on which

15  others have thereafter handled, stored, manufactured, burned and tested such

16  products.  Plaintiff is informed and believes, and based thereon alleges, that

17  Defendant PETERS and/or his lessees and affiliates disposed of pyrotechnic

18  compounds containing perchlorate and/or hazardous substances, and defective and

19  obsolete products and hazardous substances/wastes, including wastes containing

20  perchlorate, by burning them on or near Defendant PETERS' property in the RASP

21  Site since 1973; that Defendant PETERS and/or his lessees and affiliates also

22  disposed of and/or stored perchlorate-contaminated and hazardous

23  substances/wastes in concrete collectors or pads equipped with clarifiers, which

24  leaked and overflowed during storm events and at other times, releasing chemical

25  wastes containing perchlorate into the soil and groundwater; that the said clarifiers

26  were improperly abandoned and left exposed to the environment, while still

27  containing perchlorate-contaminated liquids and sludges, by Defendant PETERS

28  and his lessees and affiliates until at least 2001; that perchlorate-tainted and

1   hazardous wastes from the operations of Defendant PETERS and his lessees and

2   affiliates, including floor sweepings, off-specification products, returned and

3   defective products, and damaged imported products, were stored in cardboard

4   boxes and drums, and in paper bags, then burned and/or disposed of at an unlined

5   pit on or near Defendant PETERS' property from 1973 to the present; and that a

6   1987 explosion at Defendant PETERS' property also resulted in the release of

7   perchlorate and hazardous substances/wastes into the environment, within the

8   RASP Area.  Plaintiff is also informed and believes, and based thereon alleges, that

9   Defendant PETERS and/or his lessees arranged to have some of the perchlorate-

10   contaminated and hazardous waste from his RASP Site properties and facilities

11   disposed of at Defendant COUNTY's Mid-Valley Sanitary Landfill and/or with

12   other waste handlers and processors doing business on the RASP Site within the

13   relevant time frame, including Defendant BROCO.

14         60.     Plaintiff is informed and believes and based thereon alleges, that

15   defendant Harry Hescox ("HESCOX") is an individual residing in the State of

16   California and at all times relevant was an operator of the PYROTRONICS

17   fireworks manufacturing business and facility, previously located within a portion

18   of the former RASP Area ("PYROTRONICS FACILITY").  HESCOX was

19   responsible for and had the actual and apparent ability to control all manufacturing

20   operations and waste disposal operations at the PYROTRONICS FACILITY.

21   HESCOX was, at relevant times, an officer, director and/or employee of

22   PYROTRONICS acting within the course and scope of his employment with

23   PYROTRONICS.  Plaintiff is further informed and believes and thereon alleges,

24   that during HESCOX's operation of the PYROTRONICS FACILITY, hazardous

25   substances were released into the environment as a result of periodic, but not

26   regular, accidental events, at least some of which were sudden.  Such releases

27   include, but are not limited to:  three fires in May of 1971, February 1976 and

28   October 1976 and accidental overflows of the McLaughlin Pit, which Plaintiff is

1    informed and believes was built by PYROTRONICS in or about 1972.  Plaintiff is

2    informed and believes, and based thereon alleges, that such events resulted in the

3    release of hazardous substances into the environment.  Accordingly, HESCOX is

4    liable under CERCLA as an operator.

5         61.    Plaintiff is informed and believes, and based thereon alleges, that

6    defendant Fred Skovgard ("SKOVGARD") is an individual who operated the

7    WCLC business and facility, and who is responsible for all relevant liability of

8    WCLC.  Plaintiff is informed and believes, and based thereon alleges, that

9    Defendant EMHART has fully indemnified SKOVGARD for any and all liability

10   that he may incur in this action while, at the same time, denying that EMHART is

11   the corporate successor of WCLC and that it is liable to Plaintiff.  Plaintiff is

12   further informed and believes, and based thereon alleges, that SKOVGARD was,

13   at relevant times, the chief chemist for WCLC, and that SKOVGARD personally

14   participated in, and exerted control over, the discharge and release of hazardous

15   substances, including perchlorate, into the environment at the WCLC facility.

16   Plaintiff is further informed and believes, and based thereon alleges, that

17   SKOVGARD personally released and/or directed the release of perchlorate into the

18   environment through the testing of pyrotechnic products containing perchlorate on

19   the bare ground and the disposal of perchlorate in unlined earthen pits on the

20   WCLC facility.

21        62.    Plaintiff is informed and believes, and based thereon alleges, that

22   defendant Mildred Wilkins ("WILKINS") is an individual who operated the

23   WCLC business and facility, and who is responsible for all relevant liability of

24   WCLC.  Plaintiff is informed and believes, and based thereon alleges, that

25   Defendant EMHART has fully indemnified WILKINS for any and all liability that

26   he may incur in this action while, at the same time, denying that EMHART is the

27   corporate successor of WCLC and that it is liable to Plaintiff.  Plaintiff is further

28   informed and believes, and based thereon alleges, that WILKINS was, at relevant

1    times, a production worker who personally participated in, and exerted control

2    over, the discharge and release of hazardous substances, including perchlorate, into

3    the environment at the WCLC facility. Plaintiff is further informed and believes,

4    and based thereon alleges, that WILKINS personally released and/or directed the

5    release of perchlorate into the environment through the testing of pyrotechnic

6    products containing perchlorate on the bare ground and the disposal of perchlorate

7    in unlined earthen pits on the WCLC facility.

8         63.    Plaintiff is informed and believes, and based thereon alleges, that

9    Defendants KEN THOMPSON, INC., and RIALTO CONCRETE PRODUCTS

10   (collectively hereinafter "THOMPSON") are, and at all relevant times were,

11   California Corporations, and that THOMPSON and/or its corporate predecessors

12   are, and since 1987 have been, the owners of a facility located in the vicinity of the

13   160 acre parcel in Rialto and within the RASP Area. Plaintiff is informed and

14   believes, and based thereon alleges, that the THOMPSON facility was owned by

15   Defendant PYROTRONICS CORPORATION from 1969 until it was transferred

16   to THOMPSON, that PYROTRONICS CORPORATION was a wholesale and

17   retail fireworks manufacturer who handled, stored, tested, burned and disposed of

18   defective and obsolete products, as well as waste from its manufacturing process at

19   the THOMPSON facility between 1969 and 1987, and that these activities resulted

20   in releases of perchlorate to the environment at the RASP Site. Plaintiff is

21   informed and believes, and based thereon alleges, that perchlorate was disposed of

22   by PYROTRONICS and by Defendant PYRO at the THOMPSON facility in

23   unlined, earthen disposal pits, in a pond, which overflowed from time to time, by

24   burning it on the bare ground, by testing pyrotechnic devices and by accidental

25   fires and explosions. Plaintiff is informed and believes, and thereon alleges, that

26   the property owned by THOMPSON currently contains perchlorate and TCE

27   discharged by the operations of WCLC, GOODRICH, PYRO, PYROTRONICS,

28   ORDNANCE ASSOCIATES and/or HESCOX.

1   64.    Plaintiff is informed and believes, and based thereon alleges, that at

2   all relevant times mentioned in this Complaint each of the Defendants was the

3   agent, owner, principal, representative, employee, partner, affiliate, subsidiary,

4   predecessor in interest, successor in interest, or joint venturer of each of the

5   remaining Defendants and, at all relevant times, in doing the things hereinabove

6   and hereinafter alleged, was acting within the course and scope of such agency,

7   representation, employment, partnership, successorship, joint venture, or other

8   relationship, as more particularly alleged.  The term "Defendants" when used in

9   this Complaint refers to all defendants, and also includes each defendant

10  individually.

11            OTHER RELEVANT FACTUAL BACKGROUND

12  65.    Perchlorate contamination was first detected in the Rialto, Colton and

13  Chino subbasins in late 1997.  Until late 1997, and the advent of ion

14  chromatography, the technology to detect perchlorate in water wells at

15  concentrations as low as 4 ppb - the former California action level, as heretofore

16  alleged—did not exist.  In 1997, the California Department of Health Services

17  (DHS) Action Level for perchlorate in drinking water was 18 ppb; in January

18  2002, the DHS lowered the action limit to 4 ppb for perchlorate.  Subsequent to the

19  filing of the initial complaint in this action, on or about March 12, 2004, the

20  California EPA's OEHHA issued a Public Health Goal for Perchlorate in Drinking

21  Water ("PHG") of 6 ppb, and the DHS revised the Action Level to 6 ppb.

22  66.    Since October 1997, sampling in CITY'S Rialto Well No. 2, a well

23  with capacity of 2045 gallons per minute ("GPM") located at 980 W. Easton

24  Avenue in Rialto, approximately 3,000 feet south of the RASP Site, has revealed

25  perchlorate concentrations at levels ranging up to 130 ppb.  The CITY took that

26  well out of service in October 1997.

27  67.    Since March 2001, sampling in Rialto Well No. 6, a well with

28  capacity of 2554 GPM located at 224 West Etiwanda Avenue in Rialto,

1   approximately 10,000 feet to the southeast of Well No. 2, has revealed perchlorate

2   concentrations at levels ranging between 16 and 54 ppb, and the CITY took that

3   well out of service in March 2001.

4       68.   In July 2002, sampling in CITY's Chino Well No. 1, a well with

5   capacity of 1740 GPM located at 780 West Rialto Avenue in Rialto, approximately

6   13,000 feet south and slightly east of CITY Well No. 2, revealed the presence of

7   perchlorate at a concentration of 9 ppb, and the CITY took that well out of service.

8       69.   In October 2002, sampling in Rialto Well No. 4, a well with capacity

9   of 2492 GPM located between Rialto Well No. 2 and Chino Well No. 1 at 725

10  West Baseline Avenue in Rialto, revealed the presence of perchlorate at a

11  concentration of 5.6 ppb, and the CITY took that well out of service. Subsequent

12  testing has revealed that perchlorate contamination in Rialto Well No. 4 is

13  intermittent, and that it sometimes produces clean, potable water that tests "non-

14  detect" for perchlorate. Rialto Well No. 4 is now used only intermittently and in

15  emergency need situations, and then only when it "tests clean" for perchlorate.

16      70.   In October 2002, sampling in CITY's Chino Well No. 2, a well with

17  capacity of 1694 GPM located at 225 Bloomington Avenue in Rialto, to the

18  southeast of Chino Well No. 1, revealed the presence of perchlorate at a

19  concentration of 4.6 ppb, and the CITY took that well out of service.

20      71.   Plaintiff is informed and believes, and based thereon alleges, that in

21  response to the reduced action level of 4 ppb and/or the subsequent PHG/new

22  action level of 6 ppb, other local water purveyors pumping from the contaminated

23  aquifer/s have restricted or eliminated the use of additional production wells with

24  perchlorate concentrations that exceeded 4 ppb and/or 6 ppb, and/or have incurred

25  significant expenses for well-head treatment of perchlorate contamination, inter

26  alia, as alleged hereinabove.

27      72.   Plaintiff is informed and believes, and based thereon alleges, that the

28  activities of the named Defendants and GOODRICH as alleged herein resulted in

1    discharges and disposals of hazardous substances and wastes which have over time

2    significantly contaminated the soil and groundwater underlying the RASP Area,

3    producing a contaminant plume of hazardous substances and wastes, including

4    perchlorate, which has migrated generally in a southeasterly direction, extending

5    over many miles through one or more contaminated aquifers and contaminating

6    numerous of Plaintiffs municipal water supply wells, and surrounding property and

7    natural groundwater resources and proprietary and other interests, with hazardous

8    substances and wastes, including perchlorate.

9        73.    Plaintiff is informed and believes and based thereon alleges that the

10    perchlorate plume emanating from where the Defendants formerly operated and

11    currently operate has and continues to migrate towards the City of Colton.

12    Preliminary analysis and characterization of the perchlorate plume and its

13    migration have revealed that a basin-wide cleanup is necessary.

14        74.    Plaintiff has substantially complied with the applicable provisions of

15    the NCP in conducting all of its response activities, and has maintained

16    documentation to support all response actions.  Such documents relate to the

17    source and circumstances of the releases of perchlorate and the identity of

18    responsible parties, including but not limited to, an investigation of historical

19    activities on the RASP site and documents regarding the impacts and potential

20    impacts to the public health and welfare and the environment related to the

21    perchlorate contamination.  Plaintiff has maintained an accurate accounting of

22    costs incurred for all of its response actions.  Plaintiff's response actions have not

23    yet been completed.

24        75.    Plaintiffs response activities include investigations, including but not

25    limited to investigations relating to the source of the contamination, the potentially

26    responsible parties and their historical and/or current activities, the health effects of

27    perchlorate, the methods of removing perchlorate from soil, groundwater and

28

1   drinking water, and meeting CITY's demand for water in light of the

2   contamination.

3         76.    Plaintiffs response costs include the direct and indirect costs of:

4   investigation; installation, operations and maintenance of wellhead treatment

5   facilities; acquisition of safe potable drinking water for its ratepayers; coordination

6   with the California Water Quality Control Board, Santa Ana Region; coordination

7   with the Inland Empire Task Force; coordination with the United States

8   Environmental Protection Agency; water supply emergencies and actions taken in

9   furtherance thereof; keeping the public and relevant government agencies informed

10   of the perchlorate contamination and actions taken to address such contamination;

11   and any costs and fees of attorneys, consultants, and experts.

12         77.    In addition to said investigations and activities, CITY conducted

13   depositions and other discovery in Action No. ED CV 04-79PSG (SSx) of the

14   operations and activities of GOODRICH and named defendants and provided

15   evidence therefrom to the relevant federal and California environmental agencies,

16   the United States Environmental Protection Agency and California Regional Water

17   Quality Control Board – Santa Ana Region.  CITY prepared a database of

18   perchlorate and TCE detections, activities and operations, well pumping, water

19   levels in the Rialto-Colton Basin, and other data, and made relevant portions

20   thereof available to the United States Environmental Protection Agency and

21   California Regional Water Quality Control Board – Santa Ana Region, and

22   publicly.  CITY pursued in its Fifth Claim in Action No. ED CV 04-79 PSG (SSx),

23   remedies for injunctive relief pursuant to RCRA § 7002(a)(1)(B) for investigation

24   and abatement of the imminent and substantial endangerment to the health of

25   CITY's citizens and ratepayers through the contamination of CITY's water supply,

26   and the environment, including removal action, abatement, and remediation.

27         78.    CITY's efforts directly resulted in the naming of COUNTY to a

28   Cleanup and Abatement Order under the California Water Code for the cleanup

1    and abatement of contamination on the western portion of the plume, by an

2    amendment to Abatement Order R8-2003-0013 and Order No. R8-2004-0072.

3    Pursuant to said orders, COUNTY has developed of a workplan and implemented a

4    cleanup of substantial portions of the western portion of the plume, which is

5    ongoing to the present time. In June 2008, the anticipation of the potential naming

6    of the source areas to the National Priorities List, and to further settlement efforts,

7    CITY dismissed action No. ED CV 04-79 PSG (SSx) without prejudice pursuant to

8    Section 1 of a Memorandum of Understanding with Defendants. On September 3,

9    2008, the site was proposed for inclusion on the National Priorities List by the

10    United States Environmental Protection Agency. On September 24, 2009, the

11    United States Environmental Protection Agency named the site, denominated the

12    "B.F. Goodrich Site" to the National Priorities List. Deposition transcripts from

13    action No. ED CV 04-79 PSG (SSx) and the CITY's database were cited by the

14    United States Environmental Protection Agency in the supporting documents at the

15    time of adding the site to the National Priorities List.

16        79.    The United States Environmental Protection Agency is currently

17    engaged in installation and operation of monitoring wells and development on

18    interim remedy, modeling, commencement of a remedial investigation feasibility

19    study, and other activities designed to abate and remediate the contamination on

20    the eastern portion of the plume from sources located within the 160-acre area.

21    The assertion of jurisdiction over the eastern portion of the plume by the United

22    States Environmental Protection Agency is providing, and will in the future

23    provide, substantially the relief sought by CITY with respect to the eastern portion

24    of the plume in the Fifth Claim pursued by CITY in action No. ED CV 04-79 PSG

25    (SSx). CITY is informed and believes and thereon alleges that in the course of

26    implementing remedies and asserting its jurisdiction under CERCLA, the United

27    States Environmental Protection Agency, in addition to general notices previously

28    furnished to GOODRICH, BDI, PYRO, MING, and THOMPSON, may pursue

1   further notices and/or orders.  The CITY has substantially prevailed in obtaining

2   the relief sought with respect to the eastern portion of the plume in the Fifth Claim

3   pursued by CITY in action No. ED CV 04-79 PSG (SSx).  In the event that

4   additional notices and/or orders are issued by the United States Environmental

5   Protection Agency that cause the material alteration of the legal relationship of any

6   person or party whether or not named or identified in this Action, CITY shall be

7   entitled to an award of attorneys' fees under RCRA as a substantially prevailing

8   party.  CITY shall seek leave to amend this complaint with respect to parties that

9   may be named or subject to orders of the United States Environmental Protection

10   Agency with respect to the eastern portion of the plume as the facts may warrant.

11                           FIRST CLAIM FOR RELIEF

12   (Recovery of Response Costs and Damages Pursuant to CERCLA § 107(a) -

13        Against DOD, KLI, EMHART, BDI, PYROTRONICS, COUNTY, RRM,

14   BROCO, DENOVA, ENVIRONMENTAL ENTERPRISES, INC., APE, PYRO,

15        TROJAN, ASTRO, ZAMBELLI, RAYTHEON, GENERAL DYNAMICS

16        CORPORATION, HUGHES AIRCRAFT COMPANY, TUNG CHUN

17        COMPANY, MING, WHITTAKER, DELTA T. INC., AMERICAN WEST

18        EXPLOSIVES, GOLDEN STATE EXPLOSIVES, ETI, SCHULZ TRUST

19   DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE ASSOCIATES, PETERS,

20                 HESCOX, SKOVGARD, WILKINS, THOMPSON)

21        80.    Plaintiff refers to and realleges paragraphs 1 through 79 of this

22   Complaint and incorporates them herein by this reference.

23        81.    Under this claim for relief, Plaintiff seeks recovery of response costs

24   Plaintiff has incurred or will incur in connection with the contamination which has

25   migrated and continues to migrate from the RASP Area.

26        82.    Defendants, and each of them, are "persons" as defined by § 101(21)

27   of CERCLA, 42 U.S.C. § 9601(21).

28

1    83.    42 U.S.C. § 9607(a)(l) imposes liability on any "person" who is the

2    owner or operator of a vessel or a facility for, *inter alia,* all necessary response

3    costs incurred by a person consistent with the NCP.

4    84.    42 U.S.C. § 9607(a)(2) imposes liability on any "person" who at the

5    time of a disposal of any hazardous substances owned or operated any facility at

6    which such hazardous substances were disposed of for, *inter. alia,* all necessary

7    responses costs incurred by a person consistent with the National Contingency

8    Plan.

9    85.    42 U.S.C. § 9607(a)(3) imposes liability on any "person" who

10   arranges for the disposal of hazardous substances, or arranges with a transporter for

11   transport or disposal of hazardous substances owned or possessed by such persons,

12   for, inter alia, all necessary response costs incurred by a person consistent with the

13   NCP.

14   86.    The RASP Site, and each individual site within the RASP Area where

15   hazardous substances or wastes were disposed of and/or discharged, are, and at all

16   times relevant herein were, a facility or facilities within the meaning of § 10l(9) of

17   CERCLA, 42 U.S.C. § 9601(9).

18   87.    The actions of Defendants, and each of them, with regard to the

19   disposal of hazardous substances and wastes, including perchlorate, at the RASP

20   Area, constitute a release or threatened release of hazardous substances at a facility

21   within the meaning of CERCLA § 101(22), 42 U.S.C. § 960l(22).

22   88.    Plaintiff, who is a "person" as defined in CERCLA § 101(21), 42

23   U.S.C. § 9601(21), has undertaken preliminary investigation and other activities

24   designed to investigate and identify the presence of contamination and identify

25   those persons and entities responsible for said contamination, as well as to

26   characterize and remediate the contamination.  Plaintiff has incurred, and will

27   continue to incur, substantial response costs to continue its investigation into the

28   nature and scope and extent of the subsurface contamination affecting, beneath and

1   in Plaintiffs property and wells caused or contributed to by the Defendants as

2   alleged herein.  All such response costs incurred, and that will be incurred, have

3   been and will continue to be necessary and consistent with the NCP.

4        89.   As a direct and proximate result of Defendants' releases or threatened

5   releases of hazardous waste and substances, including perchlorate, at and from the

6   RASP Site, Plaintiff has incurred, and will continue to incur response costs.

7        90.   Pursuant to 42 U.S.C. § 9607(a) the Defendants, and each of them, are

8   strictly, and jointly and severally, liable, or are otherwise liable as provided by

9   applicable law, to Plaintiff for all necessary response costs incurred by Plaintiff in

10   responding to the released hazardous substances and wastes.

11        91.   As a direct and proximate result of Defendants' conduct, Plaintiff is

12   entitled to recover all past, present, and future response costs, together with interest

13   from Defendants, pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

14   <u>SECOND CLAIM FOR RELIEF</u>

15   (Declaratory Relief re: Future Response Costs Pursuant to CERCLA § 113(g) -

16   Against DOD, KLI, EMHART, BDI, PYROTRONICS, COUNTY, RRM,

17   BROCO, DENOVA, ENVIRONMENTAL ENTERPRISES, INC., APE, PYRO,

18   TROJAN, ASTRO, ZAMBELLI, RAYTHEON, GENERAL DYNAMICS

19   CORPORATION, HUGHES AIRCRAFT COMPANY, TUNG CHUN

20   COMPANY, MING, WHITTAKER, DELTA T. INC., AMERICAN WEST

21   EXPLOSIVES, GOLDEN STATE EXPLOSIVES, ETI, SCHULZ TRUST

22   DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE ASSOCIATES, PETERS,

23   HESCOX, SKOVGARD, WILKINS, THOMPSON)

24        92.   Plaintiff refers to and incorporates by this reference the allegations

25   contained in paragraphs 1 through 91, inclusive, as though fully set forth herein.

26        93.   Pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiff is

27   entitled to entry of a declaratory judgment declaring (i) that Defendants, and each

28   of them, are jointly and severally liable for Plaintiffs response costs or,

- 52 -

1    alternatively, are liable for contribution for their equitable allocation thereof (ii)

2    that all relevant actions taken by Plaintiff are consistent with the NCP, and (iii) that

3    Plaintiff has at all times acted reasonably and in good faith and is not liable under

4    CERCLA to any third party or Defendant in any manner, as a result of the

5    disposals and releases of Defendants as alleged herein or, alternatively, has a de

6    minimis or zero equitable allocation or share.

7         94.    Plaintiff further requests that this Court, after entering a declaratory

8    judgment as prayed for herein, retain jurisdiction of this action, pursuant to 28

9    U.S.C. § 2202, and grant Plaintiff such further relief against Defendants, and each

10   of them, as is necessary and proper to effectuate the Court's declaration.

11                          THIRD CLAIM FOR RELIEF

12   (Recovery of Response Costs Pursuant to HSAA; Indemnity/Contribution Pursuant

13      to California Health & Safety Code, § 25363(e) - Against KLI, EMHART, BDI,

14      PYROTRONICS, COUNTY, RRM, BROCO, DENOVA, ENVIRONMENTAL

15        ENTERPRISES, INC., APE, PYRO, TROJAN, ASTRO, ZAMBELLI,

16   RAYTHEON, GENERAL DYNAMICS CORPORATION, HUGHES AIRCRAFT

17      COMPANY, TUNG CHUN COMPANY, MING, WHITTAKER, DELTA T.

18      INC., AMERICAN WEST EXPLOSIVES, GOLDEN STATE EXPLOSIVES,

19      ETI, SCHULZ TRUST DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE

20      ASSOCIATES, PETERS, HESCOX, SKOVGARD, WILKINS, THOMPSON)

21        95.    Plaintiff refers to and incorporates by reference the allegations

22   contained in paragraphs 1 through 94, paragraphs 111-146, and paragraphs 155-

23   161 inclusive, as though set forth in full herein.

24        96.    The California Hazardous Substance Account Act ("HSAA"; Cal.

25   Health & Safety Code, § 25300, *et seq.*) provides that any person who has incurred

26   removal or remedial action costs in accordance with HSAA or CERCLA (see

27   Health & Safety Code, § 25315) may seek contribution or indemnity from any

28   person who is liable pursuant to HSAA.  Health & Safety Code, § 25363(e).

1   Defendants herein are "covered persons" under CERCLA (42 U.S.C. § 9607(a))
2   and are therefore "responsible parties" and "liable persons" under the HSAA.
3   Health & Safety Code, § 25323.5(a).  Written notice of commencement of this
4   action has been given to the Director of the Department of Toxic Substances
5   Control in accordance with the HSAA.  Health & Safety Code, § 25363(e).
6       97.    All of the contaminants that Defendants disposed of and released onto
7   or in the RASP Area, or at individual facilities therein, or which came to be located
8   at facilities there owned, leased or operated by Defendants or for which Defendants
9   are otherwise responsible and liable under CERCLA and HSAA, constitute
10  substances specifically listed and designated as "hazardous substances" under
11  HSAA (Cal. Health & Safety Code, § 25316), and are hazardous wastes being
12  listed or having the characteristics designating them as hazardous pursuant to 42
13  U.S.C. §§ 9601(14), and 6921(a), 40 C.F.R. §§ 261.2, 261.3(a) and 302.4(b), and
14  all applicable law.  See also *Castaic Lake Water Agency v. Whittaker Corp.* (C.D.
15  Cal. 2003) 272 F.Supp.2d 1053, 1059-60.
16      98.    As a proximate cause of Defendants' actions, omissions and/or status
17  as alleged herein, Plaintiff has incurred necessary response costs, including
18  attorneys' fees, for which Defendants are strictly liable.  Health & Safety Code,
19  § 25363.  All costs Plaintiff has incurred or will incur to remove and/or remediate
20  the contamination have been in accordance with the HSAA and the NCP.  Plaintiff
21  is informed and believes, and based thereon alleges, that the conduct and/or status
22  of Defendants qualifies as actionable under all of the relevant provisions of the
23  HSAA since such conduct and/or status either occurred or existed on or after the
24  HSAA's enactment on January 1, 1982, or was in violation of existing state or
25  federal laws at the time it occurred or existed, or both.  Health & Safety Code,
26  § 25366(a).
27      99.    Plaintiff seeks indemnity or alternatively, contribution, as appropriate,
28  from all Defendants for all response costs under California Health and Safety Code

1   Section 25363, which provides that any person who has incurred removal or

2   remedial action costs may seek contribution or indemnity from any responsible

3   Party.

4                    FOURTH CLAIM FOR RELIEF

5   (Declaratory Relief Pursuant to HSAA - Cal.  Health & Safety Code, § 25300,

6   *et seq.*, § 25363 - Against KLI, EMHART, BDI, PYROTRONICS, COUNTY,

7   RRM, BROCO, DENOVA, ENVIRONMENTAL ENTERPRISES, INC., APE,

8   PYRO, TROJAN, ASTRO, ZAMBELLI, RAYTHEON, GENERAL DYNAMICS

9        CORPORATION, HUGHES AIRCRAFT COMPANY, TUNG CHUN

10   COMPANY, MING, WHITTAKER, DELTA T. INC., AMERICAN WEST

11     EXPLOSIVES, GOLDEN STATE EXPLOSIVES, ETI, SCHULZ TRUST

12   DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE ASSOCIATES, PETERS,

13              HESCOX, SKOVGARD, WILKINS, THOMPSON)

14        100.   Plaintiff refers to and incorporates by reference the allegations

15   contained in paragraphs 1 through 99, inclusive, as though set forth in full herein.

16        101.   Because the extent and magnitude of the contamination at and

17   emanating from the RASP Site, which has migrated and continues to migrate from

18   the RASP Site, is not fully known at this time, and the investigatory, removal,

19   and/or remedial work are ongoing, Plaintiff will continue to incur necessary

20   response costs, including, but not limited to, investigation and removal expenses,

21   attorneys' fees and interest in the future.

22        102.   Pursuant to California Health and Safety Code §§ 25363, Plaintiff is

23   entitled to a declaratory judgment establishing the liability of Defendants for such

24   response costs for purposes of this and any subsequent action or actions to recover

25   further response costs.

26                     FIFTH CLAIM FOR RELIEF

27   (Injunctive Relief Pursuant to RCRA § 7002(a)(1)(B) -Against COUNTY, RRM,

28   ZAMBELLI, WHITTAKER, SCHULZ TRUST DEFENDANTS - By CITY Only)

103. Plaintiff CITY OF RIALTO refers to and incorporates by reference the allegations contained in paragraphs 1 through 102, inclusive, as though fully set forth herein.

104. Under this claim for relief, Plaintiff CITY OF RIALTO seeks mandatory, preliminary and permanent injunctive relief directing those Defendants who participated in and are responsible for the groundwater contamination affecting, below and in Plaintiffs wells and property, and which is injuring, damaging and destroying natural resources and Plaintiffs proprietary and other interests in the same, and which has migrated from, and continues to migrate from and off, the RASP Site, to undertake the necessary and extensive environmental investigation of the soil and groundwater contamination at and emanating from the RASP Site, and at Plaintiffs property and wells where it has migrated, and continues to migrate from the RASP Site, to analyze the remedial alternatives, and to implement the appropriate remedy to abate and remediate the hazardous environmental contamination.

105. Plaintiff CITY OF RIALTO has given the requisite notices of intent to file suit pursuant to RCRA § 7002(b)(2)(a), 42 U.S.C. § 6972(b)(2)(A), to all relevant Defendants.

106. Each Defendant is a "person" as defined in RCRA § 1004(15), 42 U.S.C. § 6903(15).

107. Defendants' disposal and discharges of hazardous substances and waste, including, without limitation, perchlorate, at the RASP Site, and their failure to abate the resulting subsurface contamination, has caused or contributed to movement of groundwater contamination from the RASP Site through the soils and groundwater and into the subsurface of Plaintiff CITY OF RIALTO's property and wells, as alleged more specifically herein. The contaminated soil at the RASP Site, and the contaminated groundwater underlying and emanating from the RASP Site, has created an imminent and substantial endangerment to health and the

1   environment, and will continue to present an imminent and substantial

2   endangerment to health and the environment until completely abated. The

3   hazardous substances, including perchlorate, from the RASP Site detected in the

4   groundwater affecting, below and in Plaintiff CITY OF RIALTO's property and

5   wells substantially exceeds levels recognized as safe by the federal and state

6   governments.

7        108.   Plaintiff CITY OF RIALTO has requested that Defendants participate

8   in the performance or financing of the urgently required and extensive response

9   actions at the RASP Site and the contaminated aquifer/s affecting Plaintiff CITY

10  OF RIALTO's property and wells. Such response actions include investigation of

11  the scope and extent of contamination emanating from the RASP Site, a necessary

12  prerequisite to the analysis of remedial alternatives and to the determination,

13  selection, and implementation of the appropriate remedies to abate the

14  endangerment resulting from the contamination emanating from the RASP Site as

15  alleged herein. The Defendants have refused, and continue to refuse, Plaintiff

16  CITY OF RIALTO's request to participate in the environmental investigation in

17  any way, even though the Defendants have caused or contributed to the past and

18  ongoing disposal of solid waste and hazardous waste at the RASP Site which

19  presents an imminent and substantial endangerment to health and the environment.

20       109.   This Court has jurisdiction and authority pursuant to 42 U.S.C.

21  § 6972(a) to order both mandatory preliminary and permanent injunctive relief

22  requiring Defendants to take all action necessary to investigate and abate the

23  imminent and substantial endangerment to health and the environment which

24  affects and exists at, beneath and in Plaintiff CITY OF RIALTO's property and

25  wells from contamination which has migrated and continues to migrate from the

26  RASP Site; such actions, without limitation, include requiring Defendants to

27  undertake a "removal action" to immediately abate the contaminated soils at the

28  RASP Site (so as to eliminate the sources of the contamination of the groundwater

1   aquifer/s affecting, at and beneath Plaintiff CITY OF RIALTO's property and

2   wells), requiring Defendants to complete the necessary and extensive

3   environmental investigations of the soil and groundwater contamination at the

4   RASP Site, in the contaminated aquifer/s, and at and under Plaintiff CITY OF

5   RIALTO's property and wells which has migrated, and continues to migrate from

6   the RASP Site, requiring Defendants to analyze the remedial alternatives, and

7   requiring Defendants to implement the appropriate remedy to abate and remediate

8   the environmental contamination which has migrated and continues to migrate

9   from the RASP Site.

10                      SIXTH CLAIM FOR RELIEF

11       (Nuisance - Cal. Civ. Code, § 3479 - Against KLI, EMHART, BDI,

12   PYROTRONICS, COUNTY, RRM, BROCO, DENOVA, ENVIRONMENTAL

13       ENTERPRISES, INC., APE, PYRO, TROJAN, ASTRO, ZAMBELLI,

14   RAYTHEON, GENERAL DYNAMICS CORPORATION, HUGHES AIRCRAFT

15     COMPANY, TUNG CHUN COMPANY, MING, WHITTAKER, DELTA T.

16     INC., AMERICAN WEST EXPLOSIVES, GOLDEN STATE EXPLOSIVES,

17     ETI, SCHULZ TRUST DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE

18     ASSOCIATES, PETERS, HESCOX, SKOVGARD, WILKINS, THOMPSON)

19       110.   Plaintiff refers to and incorporates by this reference the allegations

20   contained in paragraphs 1 through 109, inclusive, as though fully set forth herein.

21       111.   Under this claim for relief, Plaintiff seeks economic, property and

22   related damages Plaintiff has suffered that are proximately caused by the acts and

23   omissions of Defendants resulting in the environmental contamination which has

24   migrated and continues to migrate from the RASP Site, and that are found to be not

25   recoverable or available as response costs under CERCLA, not barred by the

26   provisions of CERCLA, and not to conflict or interfere with the accomplishment

27   and execution of CERCLA's objectives, potentially including, but not limited to,

28   economic and property damages incurred in the form of costs of water

1    conservation, loss of free use and enjoyment of Plaintiffs property and property

2    rights (including lost recharge and storage capacity), loss of and damage to

3    Plaintiffs proprietary interests in groundwater and groundwater resources, and all

4    other losses to Plaintiffs economic and property rights and interests proximately

5    caused by the contamination which has migrated and continues to migrate from the

6    RASP Site.  Plaintiff does not pray for duplicate recovery of response costs

7    available under CERCLA, or to recover items only properly recoverable as

8    response costs as defined by CERCLA that are inconsistent with the NCP, under

9    this claim for relief or any of its other State law tort claims for relief.  The rights

10   asserted and damages sought under this claim for relief and all of Plaintiffs other

11   state law tort claims are expressly preserved under CERCLA. 42 U.S.C.

12   §§ 9607(e)(2), 9613(f)(l), 9614(a)-(b), 9652(d); see *Beck v.  Atlantic Richfield Co.*,

13   62 F.3d 1240, 1243 fn. 8 (9th Cir. 1995) ("CERCLA preserves the plaintiffs' right

14   to pursue state law remedies."); *Stanton Road Associates v.  Lohrey Enterprises*,

15   984 F.2d 1015, 1021-1022 (9th Cir. 1993) ("[T]he express language of the statute

16   defeats Lohrey's contention that CERCLA preempts a state law recovery."); *U.S.*

17   *ex rel Dept. of Fish and Game v. Montrose*, 788 F.Supp. 1485, 1496 (C.D. Cal.

18   1992) ("[This] Court holds as a matter of law that CERCLA is not an exclusive

19   remedy, and that Defendants are entitled to bring counterclaims based on *both*

20   CERCLA and tort law."); *City of Merced v. Fields*, 997 F.Supp. 1376, 1336 (E.D.

21   Cal. 1998).

22          112.   Plaintiff is informed and believes, and based thereon alleges, that at

23   all times during Defendants' ownership and operation or possession of the relevant

24   facilities at the RASP Site, Defendants used said facilities and the surrounding

25   property in violation of the law, and public and private safety, by improperly

26   releasing, discharging, handling and disposing of hazardous substances and wastes

27   at and around the RASP Site as alleged herein, resulting in soil and groundwater

28

1   contamination that has migrated from the RASP Site and now exists in the

2   contaminated aquifer/s affecting and underlying Plaintiffs property and wells.

3          113.   Plaintiff is informed and believes, and based thereon alleges, that at

4   the time Defendants owned, possessed and/or operated the facilities at the RASP

5   Site, said Defendants knew or should have known that hazardous substances,

6   including perchlorate, were present in the soil and groundwater underlying the

7   RASP Site as the result of the tortious and unlawful releases and disposal of solid

8   and liquid waste which occurred at the RASP Site facilities; however, said

9   Defendants knowingly, tortiously and unlawfully failed to abate the continuing

10  nuisance and failed to prevent the migration of such contamination from the RASP

11  Site into the groundwater aquifer/s affecting and onto, beneath and into Plaintiffs

12  property and wells.

13         114.   The existence of contamination in the groundwater aquifer/s affecting

14  and underlying Plaintiffs property and wells caused by the tortious and unlawful

15  disposals and releases of hazardous substances as alleged herein, and said

16  Defendants' failure to abate the continuing nuisance and prevent its migration

17  onto, beneath and into Plaintiffs property and wells as alleged herein, constitutes a

18  nuisance as provided by and within the meaning of California statutory law, and

19  specifically California Civil Code § 3479, as it has, inter alia, substantially

20  interfered with and obstructed Plaintiffs free use and enjoyment of Plaintiffs

21  property and proprietary and other rights and interests.  California Civil Code

22  § 3479 provides in pertinent part:

23         Anything which is injurious to health ... or is indecent or offensive to

24             the senses, or an obstruction to the free use of property, so as to

25             interfere with the comfortable enjoyment of life or property, or

26             unlawfully obstructs the free passage or use, in the customary manner,

27             of any navigable lake, or river, bay, stream, canal, or basin...is a

28             nuisance.

1   Plaintiff also has special statutory authority to bring a civil action to abate a

2   nuisance under California statutory law. See Cal. Code Civ. Proc., § 731; Cal. Civ.

3   Code § 3494; *City and County of San Francisco v. Buckman,* 111 Cal. 25, 30-31

4   (1896); *City of Turlock v. Bristow,* 103 Cal.App. 750, 755 (1930);

5   *Perepletchikoff v. City of Los Angeles,* 174 Cal.App.2d 697, 699 (1959). The

6   aforesaid nuisance is continuing for purposes of California's statute of limitations

7   because it is abatable and/or because the groundwater contamination herein at issue

8   continues to migrate, move, and spread onto, into and across the subsurface of

9   Plaintiffs property and wells, and through one or more contaminated aquifers, and

10  its impact has thus varied, and continues to vary, over time. *Mangini v. Aerojet-*

11  *General Corp.,* 12 Cal.4th 1087, 1093 (1996); *Field-Escandon v. DeMann,* 204

12  Cal.App.3d 228, 234 (1998); *Beck Development Co. v. Southern Pacific*

13  *Transportation Co.,* 44 Cal.App.4th 1160, 1218 (1996) ("contamination may be

14  shown to be a continuing nuisance by evidence that the contaminants continue to

15  migrate through land and groundwater causing new and additional damage on a

16  continuous basis."); *Newhall Land & Farming Co. v. Superior Court,* 19

17  Cal.App.4th 334, 341 (1993); *Capogeannis v. Superior Court,* 12 Cal.App.4th 668,

18  673, 681 (1993); *Arcade Water Dist. v. U.S.,* 940 F.2d 1265, 1268 (9th Cir. 1991)

19  ("In determining under California law whether the nuisance is continuing, the most

20  salient allegation is that contamination continues to leach into [the well].").

21      115.  Defendants, and each of them named to this cause of action, have

22  threatened to, and will, unless restrained by this Court, continue to maintain the

23  nuisance by failing to investigate, remove, and remediate the environmental

24  contamination which has migrated and continues to migrate from the RASP Site,

25  and each and every failure to act has been, and will be, without the consent, against

26  the will, and in violation of the rights of Plaintiff.

27      116.  Unless Defendants, and each of them named to this cause of action,

28  are restrained by order of this Court from continuing their non-responsive course

1    of conduct by failing to abate the contamination which has migrated and continues

2    to migrate from the RASP Site, it will be necessary for Plaintiff to commence

3    many successive actions against Defendants, and each of them, to secure

4    compensation for damages sustained, thus requiring a multiplicity of suits.

5        117.   Unless Defendants, and each of them named to this cause of action,

6    are enjoined from continuing their non-responsive course of conduct by failing to

7    abate the contamination which has migrated and continues to migrate from the

8    RASP Site, Plaintiff will suffer irreparable injury in that the usefulness and

9    economic value of Plaintiffs property (including its water), wells and proprietary

10   and other interests and water rights will be substantially diminished, to its own and

11   its citizens' detriment.

12       118.   As a proximate result of the nuisance created by the Defendants, and

13   each of them named to this cause of action, Plaintiff has incurred, and will

14   continue to incur, damages and costs as alleged herein.

15       119.   Further, Defendants named to this cause of action are liable to the

16   extent provided by California law, as preserved by CERCLA as hereinabove

17   alleged, for all consequential damages and costs arising from their creation of and

18   failure to abate the continuing nuisance, including, but not limited to, damages

19   Plaintiff has incurred from the loss of free use and enjoyment of Plaintiffs property

20   and proprietary and other rights and interests, and costs of water conservation

21   programs.

22       120.   Plaintiff is informed and believes, and based thereon alleges in

23   accordance with the relevant requirements governing sufficiency of pleadings in

24   this Court, *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1480-1481 (C.D. Cal. 1996);

25   *Pease & Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 948 (C.D. Cal.

26   1990), abrogated on other grounds, 984 F.2d 1015 (9th Cir. 1993), that in creating

27   and failing to abate the nuisance, Defendants named in this cause of action have

28   acted with full knowledge of the consequences and damages caused to Plaintiff and

1   others and that their conduct is willful, oppressive and malicious and, accordingly,

2   Plaintiff is entitled to punitive damages (except as to Defendant COUNTY).

3   SEVENTH CLAIM FOR RELIEF

4   (Public Nuisance - Cal. Civ. Code §§ 3479, 3480 - Against KLI, EMHART, BDI,

5   PYROTRONICS, COUNTY, RRM, BROCO, DENOVA, ENVIRONMENTAL

6   ENTERPRISES, INC., APE, PYRO, TROJAN, ASTRO, ZAMBELLI,

7   RAYTHEON, GENERAL DYNAMICS CORPORATION, HUGHES AIRCRAFT

8   COMPANY, TUNG CHUN COMPANY, MING, WHITTAKER, DELTA T.

9   INC., AMERICAN WEST EXPLOSIVES, GOLDEN STATE EXPLOSIVES,

10   ETI, SCHULZ TRUST DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE

11   ASSOCIATES, PETERS, HESCOX, SKOVGARD, WILKINS, THOMPSON)

12   121.   Plaintiff refers to and incorporates by this reference, the allegations

13   contained in paragraphs 1 through 120, inclusive, as though fully set forth herein.

14   122.   Under this claim for relief, Plaintiff seeks economic, property and

15   related damages Plaintiff has suffered that are proximately caused by the acts and

16   omissions of Defendants resulting in the environmental contamination which has

17   migrated and continues to migrate from the RASP Site, and that are found to be not

18   recoverable or available as response costs under CERCLA, not barred by the

19   provisions of CERCLA, and not to conflict or interfere with the accomplishment

20   and execution of CERCLA's objectives, potentially including, but not limited to,

21   economic and property damages incurred in the form of costs of water

22   conservation programs, loss of free use and enjoyment of CITY's property and

23   property rights (including lost recharge and storage capacity), loss of and damage

24   to CITY's proprietary interests in groundwater and groundwater resources, and all

25   other losses to CITY's economic and property rights and interests proximately

26   caused by the contamination which has migrated and continues to migrate from the

27   RASP Site.  Plaintiff does not pray for duplicate recovery of response costs

28   available under CERCLA, or to recover items only properly recoverable as

1   response costs as defined by CERCLA that are inconsistent with the NCP, under

2   this claim for relief or any of its other State law tort claims for relief.  The rights

3   approved and damages sought under this claim for relief and all of Plaintiff's other

4   state law tort claims are expressly preserved under CERCLA.  42 U.S.C.

5   §§ 9607(e)(2), 9613(f)(l), 9614(a)-(b), 9652(d); see *Beck v. Atlantic Richfield Co.,*

6   62 F.3d 1240, 1243 fn. 8 (9th Cir. 1995) ("CERCLA preserves the plaintiffs' right

7   to pursue state law remedies."); *Stanton Road Associates v. Lohrey Enterprises,*

8   984 F.2d 1015, 1021-1022 (9th Cir. 1993) ("[T]he express language of the statute

9   defeats Lohrey's contention that CERCLA preempts a state law recovery."); *U.S.*

10  *ex rel Dept. of Fish and Game v. Montrose,* 788 F.Supp. 1485, 1496 (C.D. Cal.

11  1992) ("[This] Court holds as a matter of law that CERCLA is not an exclusive

12  remedy, and that Defendants are entitled to bring counterclaims based on *both*

13  CERCLA and tort law."); *City of Merced v. Fields,* 997 F.Supp. 1376, 1336 (E.D.

14  Cal. 1998).

15          123.   By causing or contributing to the disposal of hazardous substances,

16  including perchlorate, at the RASP Site in a manner which allowed them to be

17  released into the environment, Defendants are liable for causing, creating,

18  maintaining, contributing to and/or failing to abate a public nuisance as provided

19  for and specifically defined by California statutory law, see California Civil Code

20  §§ 3479 and 3480, in that the releases of hazardous substances caused and

21  contributed to by Defendants as alleged herein have created a condition which is,

22  inter alia, injurious to health, or is indecent or offensive to the senses, adversely

23  affects at the same time an entire community or neighborhood, and/or considerable

24  number of persons, and constitutes an obstruction to the free use of Plaintiff's

25  property and proprietary and other interests, which interferes with Plaintiff's

26  comfortable enjoyment of its property, and proprietary and other interests.

27  Plaintiff has special statutory authority to bring a civil action to abate a nuisance

28

1    under California statutory law.  E.g., Cal. Code Civ. Proc. § 731; Cal. Civ. Code

2    § 3494; see also Cal. Civ. Code. §§ 3490-3495.

3        124.   The condition of public nuisance below the RASP Site, and in the one

4    or more contaminated aquifers underlying that site and Plaintiffs property and

5    wells, affects the entire community, including a considerable number of persons

6    reliant upon Plaintiffs public works agency for their drinking water supply, in that

7    the hazardous substances have extensively contaminated the groundwater in a

8    major and critically important aquifer/s in which Plaintiff and other water

9    purveyors have proprietary and other interests, including groundwater extraction,

10   usage, supply, storage and recharge interests and rights.  The hazardous substances

11   have migrated, and are continuing to migrate, through and into the environment

12   and are continuing to damage the groundwater resources of the State of California,

13   and Plaintiff's proprietary interests and rights in the same, thereby depriving the

14   public of the rights and benefits of free and full beneficial uses of the contaminated

15   groundwater aquifer/s.  The impact of such groundwater contamination varies, and

16   will continue to vary, over time, as heretofore alleged.

17       125.   At the same time, the nuisance has caused special injury to Plaintiff in

18   that the Defendants' releases of hazardous substances as alleged herein have

19   caused or contributed to the soil and groundwater contamination which underlies

20   and adversely affects Plaintiff's property rights and interests, including those in

21   wells that are a primary source of Plaintiff's municipal water supply, and its

22   recharge and storage rights and interests.  As a result, Plaintiff has incurred, and

23   will continue to incur, damages as heretofore alleged.  In addition, because of the

24   condition of nuisance created and contributed to by Defendants, the resources of

25   Plaintiff have been diverted and Plaintiff has suffered diminution in its assets and

26   the value of its property and interests, and lost opportunity with respect to the free

27   use and enjoyment of its property and interests.

28

1       126.   Defendants are strictly, jointly, and severally liable for abatement of

2   the endangerment to the environment and resulting interference with the public's

3   free use and enjoyment of public property and drinking water supply, *inter alia,*

4   caused by the contamination which has migrated and continues to migrate from the

5   RASP Site.

6       127.   Further, Defendants are strictly, jointly, and severally liable for

7   damages arising from the interference with the public's free use and enjoyment of

8   public property, and the interference with Plaintiffs free use and enjoyment of its

9   property and proprietary and other interests in natural groundwater resources,

10   caused by the contamination which has migrated and continues to migrate from the

11   RASP Site.

12       128.   Plaintiff has given notice to Defendants, and each of them, of the

13   obstruction and endangerment caused by the public nuisance, and requested its

14   abatement, but Defendants, and each of them, have failed or refused, and continue

15   to fail or refuse, to take timely and proper action to abate the nuisance caused by

16   contamination which has migrated and continues to migrate from the RASP Site

17   and/or to compensate Plaintiff for damages suffered from the contamination which

18   has migrated and continues to migrate from the RASP Site.

19   EIGHTH CLAIM FOR RELIEF

20   (Negligence - Cal. Civ. Code §§ 1708, 1714 - Against KLI, EMHART, BDI,

21   PYROTRONICS, COUNTY, RRM, BROCO, DENOVA, ENVIRONMENTAL

22   ENTERPRISES, INC., APE, PYRO, TROJAN, ASTRO, ZAMBELLI,

23   RAYTHEON, GENERAL DYNAMICS CORPORATION, HUGHES AIRCRAFT

24   COMPANY, TUNG CHUN COMPANY, MING, WHITTAKER, DELTA T.

25   INC., AMERICAN WEST EXPLOSIVES, GOLDEN STATE EXPLOSIVES,

26   ETI, SCHULZ TRUST DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE

27   ASSOCIATES, PETERS, HESCOX, SKOVGARD, WILKINS, THOMPSON)

28

1    129.   Plaintiff refers to and incorporates by this reference the allegations

2    contained in paragraphs 1 through 128, inclusive, as though fully set forth herein.

3    130.   Under this claim for relief, Plaintiff seeks damages for injuries

4    Plaintiff has suffered to its property and economic interests, including water

5    conservation programs, diminution in value of its property and proprietary and

6    other interests, including loss of recharge and storage capacity rights and interests,

7    and the loss of free use and enjoyment of its property and proprietary interests, all

8    as heretofore alleged, caused by the contamination which has migrated, and

9    continues to migrate, from the RASP Site.

10   131.   Under California Civil Code §§ 1708 and 1714, the Defendants

11   named in this claim (except COUNTY), had a duty to exercise ordinary care and

12   skill in the ownership, management, use and control of their properties and

13   facilities and products and wastes, specifically with regard to the generation,

14   release, discharge and disposal of hazardous substances and wastes at the RASP

15   Site and its constituent facilities.  Civil Code § 1708 states:  "Every person is

16   bound, without contract, to abstain from injury the person or property of another,

17   or infringing on any of his or her rights."  Civil Code § 1714(a) provides in

18   pertinent part:

19       Everyone is responsible, not only for the result of his or her willful

20       acts, but also for an injury occasioned to another by his or her want of

21       ordinary care or skill in the management of his or her property or

22       person, except so far as the latter has, willfully or by want of ordinary

23       care, brought the injury upon himself or herself.

24   Civ. Code, § 1714(a).

25   132.   As to defendant COUNTY, Govt. Code § 835 provides:

26       Except as provided by statute, a public entity is liable for injury

27       caused by a dangerous condition of its property if the plaintiff

28       establishes that the property was in a dangerous condition at the time

1    of the injury, that the injury was proximately caused by the dangerous

2    condition, that the dangerous condition created a reasonably

3    foreseeable risk of the kind of injury which was incurred, and either:

4    (a) A negligent or wrongful act or omission of an employee of the

5    public entity within the scope of his employment created the

6    dangerous condition; or

7    (b) The public entity had actual or constructive notice of the

8    dangerous condition under Section 835.2 a sufficient time prior to the

9    injury to have taken measures to protect against the dangerous

10   condition.

11   (Govt. Code § 835(a), (b); *see also Behr v. County of Santa Cruz,* 172 Cal.App.2d

12   697, 711-712 (1959) ("dangerous condition" liability of public entity is a form of

13   negligence); *U.S. Ex Rel. Dept. of Fish and Game v. Montrose,* 788 F.Supp. 1485,

14   1494 (C.D. Cal. 1992). The CITY has alleged in this Complaint, generally and in

15   the allegations incorporated herein, that the COUNTY's Mid-Valley Sanitary

16   Landfill is currently in a dangerous condition and has been in that condition since

17   approximately 1958 in that it is contaminated with toxic wastes and substances,

18   including perchlorate; that COUNTY actively accepted for disposal in unlined

19   earthen areas of the landfill perchlorate-containing and other hazardous substances

20   and wastes from others from approximately 1958 to present; and that the hazardous

21   wastes and substances, including but not limited to perchlorate, leaked out of the

22   unlined landfill where COUNTY permitted their disposal and are now migrating

23   and contaminating various aquifers and CITY's wells. *See Bonanno v. Central*

24   *Contra Costa Transit Auth.,* 30 Cal.4th 139, 149-151 (2003) (liability lies under

25   § 835 where dangerous conditions on public agency's property cause damage to

26   adjacent property not owned by agency). COUNTY's actions in constructing and

27   operating an unlined landfill actively accepting hazardous wastes are negligent

28   actions that constitute and have caused defective and dangerous property

1    conditions attributable to COUNTY.  COUNTY had actual and constructive notice

2    of the dangerous condition of the COUNTY's Mid-Valley Sanitary Landfill under

3    Govt. Code § 835.2 a sufficient time prior to the injury caused by the leaking of

4    hazardous wastes and substances, including but not limited to perchlorate, from the

5    Mid-Valley Sanitary Landfill, to have taken measures to protect Plaintiff's aquifer

6    and wells against said dangerous condition.

7          133.   Plaintiff is informed and believes, and based thereon alleges, that

8    Defendants negligently and improperly managed and controlled their properties

9    and facilities and negligently and improperly disposed of hazardous substances and

10   wastes, including perchlorate, onto and beneath the soil at the RASP Site by burial,

11   open burning, discharge into unlined pits and ponds, exposure to the environment,

12   and disposal at Defendant COUNTY's unlined Mid-Valley Sanitary Landfill, inter

13   alia, and failed to take any measures to prevent the migration of the hazardous

14   substances and waste thus disposed of at the RASP Site from moving vertically

15   downward and through and contaminating the soils and groundwater in the

16   beneficial use aquifer/s at and beneath the RASP Site, and migrating to, beneath

17   and into Plaintiffs property and wells.

18         134.   Defendants had a duty to exercise ordinary care and skill in the

19   ownership, management, use and control of the RASP Site, and their facilities,

20   specifically with regard to the generation and disposal of hazardous substances and

21   wastes at the RASP Site.

22         135.   Plaintiff is informed and believes, and based thereon alleges, that

23   Defendants negligently and improperly managed and controlled the RASP Site and

24   constituent facilities and negligently and improperly disposed of hazardous

25   substances and wastes, including perchlorate, onto and beneath the RASP Site, and

26   failed to abate and prevent the migration of the hazardous substances and wastes

27   disposed of at the RASP Site from contaminating the soils and groundwater at and

28

1   beneath the RASP Site, and migrating under, onto and into Plaintiffs property and

2   wells.

3        136.   Plaintiff is informed and believes, and based thereon alleges, that the

4   conduct, acts and omissions of Defendants alleged hereinabove were also, at the

5   time they were committed, in violation of federal, state and/or local laws, and/or in

6   violation of Defendants' own relevant operations, cleanup, safety and/or disposal

7   procedures, and/or so palpably opposed to the dictates of common prudence, that

8   no careful person would have been guilty of such conduct, acts or omissions, such

9   that Defendants' conduct constitutes negligence per se.  For example, and without

10   limitation, Defendants' actions and omissions as alleged herein violated:  (1) the

11   beneficial water use provisions of Article 10, Section 2 of the California

12   Constitution by constituting waste and unreasonable use; (2) California Health &

13   Safety Code §§ 5411, which prohibits the discharge of waste causing

14   contamination, pollution or a nuisance; and (3) Water Code, §§ 13304 and

15   13350(b)(l), which prohibit the discharge of hazardous substances into state waters

16   so as to cause pollution or a nuisance.

17        137.   As a proximate result of the negligence and negligence per se of

18   Defendants, including the constitutional and statutory violations set forth above,

19   Plaintiff has been damaged in an amount in excess of the minimum jurisdictional

20   limits of this Court.

21                       NINTH CLAIM FOR RELIEF

22        (Continuing Trespass to Land - Against KLI, EMHART, BDI, PYROTRONICS,

23        RRM, BROCO, DENOVA, ENVIRONMENTAL ENTERPRISES, INC., APE,

24   PYRO, TROJAN, ASTRO, ZAMBELLI, RAYTHEON, GENERAL DYNAMICS

25            CORPORATION, HUGHES AIRCRAFT COMPANY, TUNG CHUN

26        COMPANY, MING, WHITTAKER, DELTA T. INC., AMERICAN WEST

27        EXPLOSIVES, GOLDEN STATE EXPLOSIVES, ETI, SCHULZ TRUST

28

1   DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE ASSOCIATES, PETERS,

2   HESCOX, SKOVGARD, WILKINS, THOMPSON)

3        138.   Plaintiff refers to and incorporates by this reference the allegations

4   contained in paragraphs 1 through 137, inclusive, as though fully set forth herein.

5        139.   Under this claim for relief, Plaintiff seeks economic, property and

6   related damages Plaintiff has suffered that are proximately caused by the acts and

7   omissions of Defendants resulting in the environmental contamination which has

8   migrated and continues to migrate from the RASP Site, and that are found to be not

9   recoverable or available as response costs under CERCLA, not barred by the

10   provisions of CERCLA, and not to conflict or interfere with the accomplishment

11   and execution of CERCLA's objectives, potentially including, but not limited to,

12   economic and property damages incurred in the form of costs of water

13   conservation programs, loss of free use and enjoyment of Plaintiff's property and

14   property rights (including lost recharge and storage capacity), loss of and damage

15   to Plaintiff's proprietary interests in groundwater and groundwater resources, and

16   all other losses to Plaintiff's economic and property rights and interests

17   proximately caused by the contamination which has migrated and continues to

18   migrate from the RASP Site.  Plaintiff does not pray for duplicate recovery of

19   response costs available under CERCLA, or to recover items only properly

20   recoverable as response costs as defined by CERCLA that are inconsistent with the

21   NCP, under this claim for relief or any of its other State law tort claims for relief.

22   The rights approved and damages sought under this claim for relief and all of

23   Plaintiff's other state law tort claims are expressly preserved under CERCLA.  42

24   U.S.C. §§ 9607(e)(2), 9613(f)(1), 9614(a)-(b), 9652(d); see *Beck v. Atlantic*

25   *Richfield Co.,* 62 F.3d 1240, 1243 fn. 8 (9th Cir. 1995) ("CERCLA preserves the

26   plaintiffs' right to pursue state law remedies."); *Stanton Road Associates v. Lohrey*

27   *Enterprises*, 984 F.2d 1015, 1021-1022 (9th Cir. 1993) ("[T]he express language of

28   the statute defeats Lohrey's contention that CERCLA preempts a state law

1   recovery."); *U.S. ex rel Dept. of Fish and Game v. Montrose,* 788 F.Supp. 1485,

2   1496 (C.D. Cal. 1992) ("[This] Court holds as a matter of law that CERCLA is not

3   an exclusive remedy, and that Defendants are entitled to bring counterclaims based

4   on *both* CERCLA and tort law."); *City of Merced v. Fields,* 997 F.Supp. 1376,

5   1336 (E.D. Cal. 1998).

6         140.   The existence of contamination in the groundwater in and underlying

7   Plaintiffs property and wells caused by the tortious and unlawful disposals and

8   releases of hazardous substances and wastes as alleged herein, and by said

9   Defendants' failure to abate the continuing trespass, and prevent its migration onto,

10   under and into Plaintiff's property and wells as alleged herein, constitutes a

11   trespass which has interfered with Plaintiff's use and enjoyment of its property and

12   proprietary and other interests, which trespass is continuing because it is abatable

13   and/or because the groundwater contamination herein at issue continues to migrate,

14   move, and spread onto, under, into and across the subsurface of the contaminated

15   aquifer/s, and Plaintiff's property and wells, and its impact has thus varied, and

16   continues to vary, over time, as heretofore alleged.  Plaintiff's trespass claim is

17   grounded in well-established California statutory law, as evidenced by numerous

18   statutes recognizing a real property owner's rights to sue for and obtain damages

19   for trespass.  E.g., Cal. Civ. Code §§ 821, 826, 1708, 3281, 3282, 3283, 3333,

20   3334; Code Civ. Proc. § 338(b); *see Bonnano, supra,* 30 Cal.4th at 149-151;

21   *Montrose, supra,* 788 F.Supp. at 1494.

22         141.   Defendants, and each of them, have threatened to, and will, unless

23   restrained by this Court, continue to maintain the trespass by failing to investigate,

24   remove, and remediate the environmental contamination which has migrated and

25   continues to migrate from the RASP Site, and each and every such failure to act

26   has been, and will be, without the consent, against the will, and in violation of the

27   rights of Plaintiff.

28

1      142.  Unless Defendants, and each of them, are restrained by order of this

2    Court from continuing their non-responsive course of conduct in failing to abate

3    the contamination which has migrated and continues to migrate from the RASP

4    Site, it will be necessary for Plaintiff to commence many successive actions against

5    Defendants, and each of them, to secure compensation for damages sustained, thus

6    requiring a multiplicity of suits.

7      143.  Unless Defendants, and each of them, are enjoined from continuing

8    their non-responsive course of conduct in failing to abate the contamination which

9    has migrated and continues to migrate from the RASP Site, Plaintiff will suffer

10   irreparable injury in that the usefulness and economic value of Plaintiff's property

11   and proprietary and other interests will be substantially diminished.

12      144.  As a proximate result of the trespass created by the Defendants, and

13   each of them, Plaintiff has incurred, and will continue to incur, damages and costs

14   as heretofore alleged.

15      145.  Further, Defendants are liable to the extent provided by California

16   law, as preserved by CERCLA as hereinabove alleged, for all consequential

17   damages and costs arising from their creation of and failure to abate the continuing

18   trespass, including, but not limited to, the loss of free use and enjoyment of

19   Plaintiff's property.

20      146.  Plaintiff is informed and believes, and based thereon alleges in

21   accordance with the relevant requirements governing sufficiency of pleadings in

22   this Court, *Bureerorzg v. Uvawas,* 922 F.Supp. 1450, 1480-1481 (C.D. Cal. 1996);

23   *Pease & Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 948 (C.D. Cal.

24   1990), abrogated on other grounds, 984 F.2d 1015 (9th Cir. 1993), that in creating

25   and failing to abate the continuing trespass, Defendants have acted with full

26   knowledge of the consequences and damages caused to Plaintiff, and that their

27   conduct is willful, oppressive and malicious and, accordingly, Plaintiff is entitled

28   to punitive damages.

1

## TENTH CLAIM FOR RELIEF

2

(Inverse Condemnation - Cal. Const., Art I, § 19 – Against

3

Defendant COUNTY Only)

4      147.   Plaintiff refers to and incorporates by this reference the allegations

5   contained in paragraphs 1 through 146, inclusive, as though fully set forth herein.

6      148.   Plaintiff is informed and believes, and based thereon alleges, that

7   defendant COUNTY is, and at all relevant times was, a governmental public entity

8   possessing the power of eminent domain under the laws of the State of California.

9      149.   As a direct and necessary result of the plan, design, maintenance and

10   operation of the unlined Mid-Valley Sanitary Landfill owned and operated by

11   Defendant COUNTY, as previously alleged in more detail, Plaintiff has been and

12   is compelled to suffer a harmful physical invasion of perchlorate contamination

13   over, onto, under and into its real property, wells, proprietary and related property

14   interests in contaminated aquifer/s and its/their groundwater resources, which

15   physical invasion has substantially interfered with and damaged Plaintiff's rights to

16   use, develop, occupy and transfer its property and proprietary rights in the

17   contaminated aquifer/s and its/their groundwater resources.  The operation of the

18   Mid-Valley Sanitary Landfill in this manner and the resulting physical invasion

19   and damages from the perchlorate contamination plume has also entrenched on and

20   interfered with Plaintiff's reasonable investment-backed expectations and has

21   created a direct, peculiar and substantial burden on Plaintiff's property and

22   property rights and interests rendering them less valuable, taken and/or damaged as

23   a result of COUNTY's operations.

24      150.   The above-described damages to Plaintiff's property and property

25   rights were proximately caused by Defendant COUNTY's actions in that the Mid-

26   Valley Sanitary Landfill is a substantial source of and contributor to the

27   perchlorate plume that has polluted the contaminated aquifer/s and physically

28

1    invaded, occupied and damaged Plaintiff's property and property rights and

2    interests.

3        151.   As a result of the above-described taking and damaging of Plaintiff's

4    property, Plaintiff's damages include, but are not limited to, diminution in value of

5    Plaintiff's property and property lights; cost of well head and other treatment

6    facilities and replacement water; and costs of monitoring, investigation and expert

7    consultants, as heretofore alleged.

8        152.   Plaintiff has received no compensation from Defendant COUNTY for

9    the above-described taking of and damages to its property and property rights and

10   interests, nor has Plaintiff consented to the above-described physical invasion of

11   perchlorate plume contamination or Defendant COUNTY's operation and use of

12   the Mid-Valley Sanitary Landfill Facility in a manner causing and allowing such

13   damages.

14       153.   Plaintiff has incurred and will incur attorneys', appraisal, engineering,

15   hydrogeology, and other expert fees because of this proceeding, in amounts that

16   cannot yet be ascertained, which are recoverable in this action under the provisions

17   of California C.C.P. § 1036 and all applicable law.

18                    ELEVENTH CLAIM FOR RELIEF

19   (Declaratory Relief Pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201,

20   2202) - Against DOD, KLI, EMHART, BDI, PYROTRONICS, COUNTY, RRM,

21   BROCO, DENOVA, ENVIRONMENTAL ENTERPRISES, INC., APE, PYRO,

22   TROJAN, ASTRO, ZAMBELLI, RAYTHEON, GENERAL DYNAMICS

23   CORPORATION, HUGHES AIRCRAFT COMPANY, TUNG CHUN

24   COMPANY, MING, WHITTAKER, DELTA T. INC., AMERICAN WEST

25   EXPLOSIVES, GOLDEN STATE EXPLOSIVES, ETI, SCHULZ TRUST

26   DEFENDANTS, ENSIGN-BICKFORD, ORDNANCE ASSOCIATES, PETERS,

27   HESCOX, SKOVGARD, WILKINS, THOMPSON)

28

1    154.   Plaintiff refers to and incorporates by this reference the allegations

2    contained in paragraphs 1 through 146, inclusive, as though fully set forth herein.

3    155.   Under this claim for relief, Plaintiff seeks declaratory relief under

4    federal law to determine the respective legal rights and obligations of the parties to

5    this action.

6    156.   The CITY seeks herein, *inter alia,* remediation by defendants of

7    hazardous substances, including perchlorate, from the Rialto-Colton Groundwater

8    Basin, and a declaration of the rights and obligations of the parties hereto.

9    157.   Plaintiff is informed and believes, and based thereon alleges, that all

10   legal liability, whether arising from federal or state statutory law, or from the

11   common law, which may in the future be asserted by any individual or entity,

12   public or private, arising from or related to the contamination of and at Plaintiff's

13   property and wells, as alleged herein, is the sole and actual responsibility of the

14   Defendants.  Therefore, Plaintiff is entitled to a judicial declaration that

15   Defendants, are liable to indemnify Plaintiff for all future damages and costs that

16   may be suffered by Plaintiff as a result of the contamination of Plaintiff's property

17   and proprietary and other interests as alleged herein, or, in the alternative, that

18   Defendants, are liable to contribute to and reimburse Plaintiff for such damages

19   and costs including, without limitation, costs or damages awarded in legal or

20   administrative actions, costs of compliance with any judicial or administrative

21   order, and costs of litigation including attorneys' fees.

22                      TWELFTH CLAIM FOR RELIEF

23   (Declaratory Relief Under State Law (Cal. Code Civ. Proc., § 1060) - Against KLI,

24        EMHART, BDI, PYROTRONICS, COUNTY, RRM, BROCO, DENOVA,

25   ENVIRONMENTAL ENTERPRISES, INC., APE, PYRO, TROJAN, ASTRO,

26        ZAMBELLI, RAYTHEON, GENERAL DYNAMICS CORPORATION,

27        HUGHES AIRCRAFT COMPANY, TUNG CHUN COMPANY, MING,

28   WHITTAKER, DELTA T. INC., AMERICAN WEST EXPLOSIVES, GOLDEN

1   STATE EXPLOSIVES, ETI, SCHULZ TRUST DEFENDANTS, ENSIGN-
2   BICKFORD, ORDNANCE ASSOCIATES, PETERS, HESCOX, SKOVGARD,
3                    WILKINS, THOMPSON)

4       158.   Plaintiff refers to and incorporates by this reference the allegations
5   contained in paragraphs 1 through 146, and paragraphs 154-157, inclusive, as
6   though fully set forth herein.

7       159.   Under this claim for relief, Plaintiff seeks declaratory relief under
8   state law to determine the respective legal rights and obligations of the parties to
9   this action.

10      160.   The CITY seeks herein, *inter alia*, remediation by defendants of
11  hazardous substances, including perchlorate, from the Rialto-Colton Groundwater
12  Basin, and a declaration of the rights and obligations of the parties hereto.

13      161.   Plaintiff is informed and believes, and based thereon alleges, that all
14  legal liability, whether arising from federal or state statutory law, or from the
15  common law, which may in the future be asserted by any individual or entity,
16  public or private, arising from or related to the contamination of and at Plaintiff's
17  property and wells, as alleged herein, is the sole and actual responsibility of the
18  Defendants.  Therefore, Plaintiff is entitled to a judicial declaration that Defendants
19  are liable to indemnify Plaintiff for all future damages and costs that may be
20  suffered by Plaintiff as a result of the contamination of Plaintiff's property and
21  proprietary interests as alleged herein, or, in the alternative, that Defendants, are
22  liable to contribute to and reimburse Plaintiff for such damages and costs
23  including, without limitation, costs or damages awarded in legal or administrative
24  actions, costs of compliance with any judicial or administrative order, and costs of
25  litigation including attorneys' fees.

26      WHEREFORE, PLAINTIFF prays for judgment against Defendants and
27  each of them as follows.

28

1    <u>AS TO THE FIRST THROUGH FOURTH CLAIMS FOR RELIEF</u>

2    <u>AGAINST DEFENDANTS AS NAMED ABOVE IN EACH CLAIM FOR</u>

3    <u>RELIEF</u>:

4        (1)    For recovery from Defendants of the necessary response costs

5    incurred by Plaintiff in response to the release and threatened release of hazardous

6    substances from and at the RASP Site as alleged herein in an amount subject to

7    proof under CERCLA, HSAA, and all applicable law;

8        (2)    For recovery from Defendants of contribution under HSAA for past

9    and future recovery response costs as alleged herein in an amount subject to proof;

10       (3)    For a declaration of this Court that Defendants are solely liable for all

11    future response costs incurred by Plaintiff necessary to respond to the release and

12    threatened release of hazardous substances on and from the RASP Site, and for

13    contribution under HSAA, and all applicable law as alleged herein;

14       (4)    For retention of jurisdiction of this action by this Court after entry of

15    the requested declaratory judgment for the granting to Plaintiffs City of Rialto and

16    Rialto Utility Authority, of such further relief against Defendants as may be

17    necessary or proper to effectuate the declaration of this Court;

18       (5)    For injunctive relief under all applicable law directing Defendants to

19    investigate, characterize and abate and remediate the environmental contamination

20    resulting from their release of hazardous substances on and from the RASP Site;

21       (6)    For costs of suit;

22       (7)    For attorneys' fees in accordance with law; and

23       (8)    For such other and further relief as the Court deems just and proper.

24    <u>AS TO THE FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS AS</u>

25    <u>NAMED ABOVE IN SAID CLAIM FOR RELIEF</u>:

26       (1)    For mandatory, preliminary, and permanent injunctive relief requiring

27    Defendants, and each of them, to take all action that is necessary to investigate and

28    abate the imminent and substantial endangerment to health and the environment

1   which exists in the contaminated aquifer/s and at and below Plaintiff's property

2   and wells from contamination which has migrated and continues to migrate from

3   the RASP Site, including conducting a "removal action" to immediately abate the

4   contaminated soil at the RASP Site (so as to eliminate a source of the

5   contamination at Plaintiff's property); requiring Defendants to complete the

6   necessary and extensive environmental investigations of the soil and groundwater

7   contamination at the RASP Site, the contaminated aquifer/s and at Plaintiff's

8   property which has migrated, and continues to migrate, from the RASP Site; and

9   requiring Defendants to analyze the remedial alternatives and to implement the

10  appropriate remedy consistent with the NCP to abate and remediate the

11  environmental contamination which has migrated and continues to migrate from

12  the RASP Site;

13        (2)     For costs of suit incurred herein;

14        (3)     For attorneys' fees; and,

15        (4)     For such other and further relief as the Court may deem just and

16  proper.

17        AS TO THE SIXTH, SEVENTH, AND NINTH CLAIMS FOR RELIEF

18  AGAINST DEFENDANTS AS NAMED ABOVE IN EACH CLAIM FOR

19  RELIEF:

20        (1)     For general damages consistent with CERCLA and California law in

21  an amount to be determined at trial caused by the contamination which has

22  migrated and continues to migrate from the RASP Site as alleged herein;

23        (2)     For special damages consistent with CERCLA and California law in

24  an amount to be determined at trial caused by the contamination which has

25  migrated and continues to migrate from the RASP Site as alleged herein;

26        (3)     For punitive damages (except as against Defendant COUNTY) in an

27  amount to be determined at trial due to said Defendants' conduct and actions in

28

1   connection with the contamination which has migrated and continues to migrate

2   from the RASP Site as alleged herein;

3         (4)    For such other and further relief as the Court may deem just and

4   proper.

5         AS TO THE EIGHTH CLAIM FOR RELIEF AGAINST ALL

6   DEFENDANTS EXCEPT DOD:

7         (1)    For general damages consistent with CERCLA and California law in

8   an amount to be determined at trial caused by the contamination which has

9   migrated and continues to migrate from the RASP Site as alleged herein;

10        (2)    For special damages consistent with CERCLA and California law in

11   an amount to be determined at trial caused by the contamination which has

12   migrated and continues to migrate from the RASP Site as alleged herein;

13        (3)    For costs of suit incurred herein; and

14        (4)    For such other and further relief as the Court may deem just and

15   proper.

16        AS TO THE TENTH CLAIM FOR RELIEF AGAINST COUNTY ONLY:

17        (1)    For damages against Defendant COUNTY for inverse condemnation

18   of Plaintiff's property and property rights in an amount to be determined at the

19   time of trial with interest thereon at the legal rate from the date of the damages;

20        (2)    For reasonable attorneys', appraisal, engineering, hydrogeology and

21   other expert fees according to proof;

22        (3)    For costs of suit incurred herein; and

23        (4)    For such other and further relief as the Court may deem just and

24   proper.

25        AS TO THE ELEVENTH AND TWELFTH CLAIMS FOR RELIEF

26   AGAINST DEFENDANTS AS NAMED ABOVE IN EACH CLAIM FOR

27   RELIEF:

28

1      (1)    For declaratory relief and judgment determining the respective legal

2  rights and obligations of all the parties to this action;

3      (2)    For costs of suit incurred herein; and

4      (3)    For such other and further relief as the Court may deem just and

5  proper.

6      **Plaintiff demands a jury trial in this matter pursuant to F.R.C.P. 38,**

7  **and all applicable law.**

8  Dated: October 15, 2009        PILLSBURY WINTHROP SHAW
PITTMAN LLP

By: _____ for

SCOTT A. SOMMER
Attorneys for Plaintiffs
CITY OF RIALTO and RIALTO
UTILITY AUTHORITY